## D. P. HAZELTINE v. DANIEL H. EDGMAND.

1. EAVES-TROUGH, *Damage by Water for Want of.* Where two buildings are situated near each other, upon lots adjacent, and the eaves of one come within a few inches of the side or wall of the other, and the owner of such building has no eaves-trough, gutter, or other conductor for carrying off the rain or water falling upon his building, *held,* that an action will lie against him for any damage to the adjoining building, or its contents, caused by the water falling on the roof, and discharged against the wall of such adjoining building, on account of the absence of the proper eaves-trough, gutter, or other conductor to carry off such water.

2. ———— *Misleading Instructions.* Where the defendant, who is the owner of a building, has no eaves-trough, gutter, or other conductor to prevent the water falling and gathering on his roof from being discharged and thrown against and upon the wall of an adjoining building, and the plaintiff, as the owner of such adjoining building, brings an action against the defendant to recover damages for permitting the water falling on the roof of defendant's building to be discharged against and upon the wall of his building; and there is no evidence tending to show that the injuries complained of resulted

from extraordinary or accidental circumstances, and no evidence tending to show that the defendant had any right, by grant, permission, or prescription, to allow the rain falling upon his building to be discharged from the eaves thereof upon the adjoining building, *held*, that the following portions of the charge given to the jury are misleading, and in a very close case, sufficient ground for reversing the judgment rendered against the plaintiff, namely: "The defendant is liable for all the consequences resulting from such defects or acts, unless the same resulted from extraordinary or accidental circumstances;" and "a party has no right to make any erections on his premises and allow them to remain so near another's land that the rain falling thereon is discharged from the eaves upon adjoining buildings or land, except upon or by express grant or permission, or else by prescription for such length of time as furnishes a presumption of a grant so to do, which is usually for a term of years — twenty years or more for prescription, but if by permission or grant, no particular length of time is required."

### Error from Cherokee District Court.

ON June 27, 1882, *D. P. Hazeltine* brought his action against *Daniel H. Edgmand* to recover damages from the defendant for permitting the water falling on the roof of his (defendant's) building to be discharged against and upon the wall and building of plaintiff, and to obtain a restraining order, preventing the defendant from continuing the nuisance. At the commencement of the action, the probate judge of Cherokee county granted a temporary injunction, as prayed for in the petition, and fixed the amount of the undertaking at $200. On November 29, 1882, the defendant filed his answer, consisting of a general denial only. Trial at the October Term, 1883, before a jury. The court — Chandler, J., presiding — instructed the jury as follows:

" The petition in this case has been read to you, and in substance, so far as is necessary for your consideration, it states: That on the 16th day of May, 1881, and for a long time prior thereto, and at the time of filing the petition, the plaintiff and the owner in fee simple of the following-described real estate, to wit: Seven feet off the east side of lot number fourteen and twenty-five feet off the west side of lot number fifteen, in block number sixteen, in the city of Columbus, Cherokee county, and the buildings and improvements thereon ; and that at said

date the plaintiff had erected on the premises a one-story business house, the east wall of which was wholly built upon the premises of plaintiff, and that the east or outside line of said wall was about one inch west of the east line of said premises, above described, leaving about one inch on the east side of said premises unoccupied; that said east wall of said building is of the length of one hundred and twenty feet, in height twenty-one feet, and in thickness two feet, and constructed of stone and mortar, and that said plaintiff, since the first day of August, 1881, has used and occupied said building for a hardware store, and that on the 16th day of May, 1881, the said defendant, Daniel H. Edgmand, became the owner in fee of the following-described premises: One foot off the east side of lot number fifteen and nineteen feet off the west side of lot number sixteen, all in block number sixteen, in the city of Columbus, in Cherokee county, and the buildings and improvements thereon; that there was at that date and still remained at the time of filing the petition, erected on said premises a large two-story frame building, the west side of which is built near to or upon the west line of said premises last above described, and adjoining the premises of the plaintiff, above described, on the east side, and that the roof on the west side of said building of the defendant is constructed so near to the division line between the premises of the plaintiff and the defendant that the water falling upon or accumulating upon the west side of the roof of the defendant's building is permitted by said defendant to be carried by said roof and deposited in and upon the said east wall of said building of the plaintiff, whereby he, the said plaintiff, has been greatly damaged; that the water so as aforesaid permitted by the defendant to be carried and deposited upon and against the said wall of the said building of plaintiff has permeated said wall and soaked through the same to the inside of the said building, wetting, staining and softening the mortar and plastering in and upon said wall, and thereby loosening the stones in said wall, rendering the same weak and insecure and liable to fall, and staining, rusting and moulding and dampening the goods, wares and merchandise of the plaintiff, placed on the shelves against said east wall, to the nuisance of the plaintiff and to his great and irreparable damage and injury; that said defendant, since the 16th day of May, 1881, has by himself and his tenants occupied said premises so as aforesaid owned by him, and that from said date said defendant, to the time of the filing of said petition, well knew and was fully informed

of the fact that the water escaping from his said roof was carried and deposited upon and against the said wall of the plaintiff's building, to the plaintiff's great damage and injury, and was a nuisance to the plaintiff; and that the defendant, although often requested by the plaintiff to make such repairs to his said building and provide said building with the necessary gutters and pipes to prevent the water escaping from said roof from being carried and deposited against and upon the wall of plaintiff's building, and thereby doing plaintiff great and irreparable injury and damage, yet the defendant wholly neglected and refused to make such repairs, and that the deposit of water upon and against the said wall of plaintiff from the roof of the defendant's building, with the knowledge and consent of the defendant, is a nuisance to the plaintiff, by reason of which he has sustained great damage and injury in the past, in the sum of one thousand dollars, and its continuance will occasion the plaintiff great and irreparable injury.

"To the averments of the petition, which are in substance as I have directed your attention, the defendant files an answer putting in issue the averments of said petition, and so putting them in issue, the affirmative of this case rests with the plaintiff, and the burden of the proof rests upon him, and he must satisfy you by a preponderance of evidence in this case of the correctness of all the material averments of his petition, and that he has sustained damages in whole or in part as he has therein averred.

"By a preponderance of evidence, I mean that evidence which the court has permitted to go to you in the shape of facts, acts, circumstances and direct evidence surrounding this case, as you have heard it, and then from the witness in this case, which you accept under the rules herein given you, as outweighing or overbalancing the evidence of the defendant, and as sustaining the averments set out in the plaintiff's petition.

"Preponderance of the evidence is not necessarily established by the greater number of witnesses who have testified in this case; it may or may not, as you shall find the facts to be, (if at all,) under the rules herein given you; but it is that evidence, whether it comes from one witness or any number of witnesses, or from facts, acts, circumstances or all developed on the trial of the cause, which you accept as outweighing or overcoming that of the defendant, (if at all,) as sustaining the averments of the plaintiff's petition.

"There are, however, no degrees of preponderance. It may

be slight or great, if at all; it is enough if it preponderates slightly or in any higher degree of comparison; but it must preponderate in favor of the plaintiff before he can sustain this action. If the plaintiff has offered evidence which tends to sustain the averments of his petition, and the defendant has offered evidence of a like character and weight, so that when weighed by you as jurors, under the rules herein given you, one balances the other, or that of the defendant outweighs that of the plaintiff, then the evidence would not preponderate in favor of the plaintiff, and your verdict must be for the defendant.

"It is admitted on this trial, that at the time of the commencement of this action and prior thereto, the plaintiff was the owner of the premises described in his petition as his. It is admitted also on this trial, that the defendant, on the 16th day of May, 1881, became the possessor and owner of the premises which it is claimed he owns, as averred in the petition, and that he was the owner of the premises on the 16th day of May, 1881, and now is the owner thereof; and plaintiff, for the purpose of establishing the averments of the petition, has given evidence for the purpose of showing that sometime in August, 1882, (and my recollection is about the 10th day of August,) he took possession of the store building which he claims he is the owner of, and from that time up to the time of the commencement of this action, and to the present time, he has been occupying the same as a hardware store; and that on the east wall thereof he has goods of the character described to you, consisting of augers, scissors, knives, forks, spoons, and other property, the character of which you will probably recollect; and that during a portion of that time, and in the months of February, March and April, (and you are to determine that from the evidence, whether my recollection is correct, or not,) the defendant allowed water, which descended in the shape of rain, to escape from the roof off the west side of his building, and allowed it to flow against and strike against the east side of his (plaintiff's) building to his damage, on account of the water damaging the building, and injuring the goods in question.

"The court says to you that a person has the right to do any act upon his own property or land, or make such erections thereon, or have buildings thereon, which does not violate the rights of his neighbor or his property, and to this extent he has full control over his premises in the erection or maintaining of his buildings already erected; he has no right to

make any erections thereon and allow them to remain so near another's land that the rain falling thereon is discharged from the eaves upon adjoining buildings or land, except upon or by express grant or permission, or else by prescription for such a length of time as furnishes a presumption of a grant so to do, which is usually for a term of years—twenty or more for prescription, but if by permission or grant, no particular length of time is required.

"In this case, the defendant has a right to keep and maintain the building on or near the line of his lot, so long as he keeps the same in the condition that it does not injure the plaintiff by the water or rain falling from the roof thereof on the plaintiff's premises, for which he avers damages in his petition in this action. And if it is so kept and maintained, then the defendant should not be held answerable in this action in damages to the plaintiff; if he does make such use of his property negligently as to damage his neighbor, he does so at his peril and he is liable for injuries naturally resulting from his act.

"While buildings are necessary for business and the habitation of man and essential for all affairs and uses in business, yet the owners of them are called upon to exercise the highest degree of care to prevent their becoming a nuisance to others, and it is the duty of the owner and occupier of a building on a division line to keep gutters or other appliances for the discharge of water from the roof of his building in proper repair and condition, to carry off water that collects thereon, and he is bound to have them of sufficient capacity to carry off the water that may fall in storms likely to occur. And if in this case the defendant, (and whether he did or not is for you to determine,) from any cause that could have been prevented and by the exercise of ordinary care, failed to carry the water from his roof, whereby the building or property of the plaintiff is damaged, as alleged in the petition, the defendant is liable for all the consequences resulting from such defects or acts, unless the same resulted from extraordinary or accidental circumstances.

"If you should find from the evidence in this case, that these buildings are located and situated in the manner concerning which evidence has been given you, and on account of rains falling upon the property of defendant, the water was thrown against the building of plaintiff in this action, and it damaged his goods in the manner claimed by him, then the defendant is answerable for all the injury resulting from the

rain which fell on the building in that manner, for the reason the plaintiff had the right to occupy his premises free and uninterrupted, and the defendant did not have the right to use his premises to the injury of the plaintiff under such circumstances.

"Evidence has been offered on the part of the defendant for the purpose of showing that his building stands at one end several inches from the building of the plaintiff, and at another end about eighteen inches or more, and that the building which the defendant owned leaned to the east, and on account of its leaning, the water falling from his roof on the eaves thereof could not strike or injure the plaintiff's building or property ih the manner claimed by him; but that the water which fell from his (defendant's) roof, fell against his own building, and upon his own property, and not upon or against that of the plaintiff.

"If you should find the water fell on his own ground, or building, and did not injure that of the plaintiff, then of course the plaintiff could not recover in this action under such circumstances, and it is for you to determine what the fact is in this particular, as in all particulars.

"Evidence has also been introduced by the defendant for the purpose of showing the character of the weather, concerning which evidence has been given, and during the time for which the plaintiff claims damages; that a wall of this character would absorb dampness and wet naturally, from natural causes, and that the damage complained of by the plaintiff resulted from that cause.

"If you should find that to be the fact in this case, then the plaintiff cannot recover in this action, for no man can be made liable for injuries resulting purely from natural causes; that is, he would not be liable for the act of God, that is, natural causes which happen from natural laws, or natural events or course of things, and he should not be held to answer because it rained, or because of protracted rain, if the damage complained of was not the act of the defendant in this action, and he did not contribute thereto.

"The principal facts and questions for you to determine are:

"1. Did the water escape from the roof of the defendant's building and damage the property of the plaintiff in this action as claimed by him, in whole or in part? 

"2. Did it escape from the roof of the defendant in the manner claimed by plaintiff?

"3. Did it damage him, the plaintiff, in the manner complained of by him?

"4. Did the water in falling from the roof of the defendant's building fall naturally against the building of the defendant or upon his ground?

"And in addition to that, the further question arises: What damage, if any, has the plaintiff sustained in this action, if you should find water had flowed against his building, as claimed by the plaintiff?

"The rule and measure of damage would be, if you find for the plaintiff, whatever necessarily and directly resulted from the escape of water in the manner claimed by plaintiff, as shown by the evidence, or the direct result of that flow as shown by the evidence in the action which the plaintiff has sustained, if any, unless you should find the plaintiff, by his own negligent act, permitted the property on the shelves, concerning which he has given evidence, with a knowledge of the water flowing, to remain there and become injured, with a full knowledge of the water flowing as claimed by him.

"While the defendant in this action would not be permitted to injure or damage the property of the plaintiff, yet if the plaintiff knowingly and willfully allowed his property to remain against the wall and become injured, he cannot complain of the damage to such property (if any), for the reason it was his duty to exercise ordinary care and diligence in the protection of his property under such circumstances.

"If you should find that water did flow from the roof of defendant's building against the property or the building of the plaintiff, then the law presumes nominal damages resulted on account thereof, and although you may find he sustained no actual damages, yet he would be entitled to what is known in the law as nominal-damages for the act, providing it flowed against the building in the manner claimed by the plaintiff, by the wrongful or negligent act of the defendant.

"If you should find the fact to be as claimed by the defendant, that the water fell upon his own premises, then there would be no damages resulting to the plaintiff in this action.

"Concerning the question of damages, the only evidence which has been offered in this trial is the evidence of the plaintiff himself, and he has given you his version of the amount of damages which he claims to have sustained in this action, and you will ascertain the damages, if any, from the evidence in this case.

14 — 35 KAS.

"Under the laws of our state, parties to a civil action are made competent witnesses to testify in their own behalf, and as such the plaintiff and defendant have been upon the stand and given their evidence relative to the injury complained of. The fact that they are parties to a suit should in no way militate against them in their evidence or their credibility as witnesses, that is, that fact alone; but the fact that they are parties and the interest which they may have in your verdict, you may take into consideration for the purpose of determining the question as to whether or not they would allow the evidence which they have given to be warped, or whether they would undertake to give evidence untruthfully, or misconstrue or incorrectly give the evidence which they have narrated upon the stand. It is for you to determine whether that is the case or not; and in such evidence they are to be governed by the same rule as other witnesses, to which I shall presently call your attention.

"I say to you that the evidence of the witness C. R. Foster shall not be considered by you in determining the question whether or not the water from the roof of the defendant injured the plaintiff's property, as claimed by him, for the reason that in the case which Mr. Foster gave, the wooden building butted up against the wall.

"Gentlemen of the jury, you are the exclusive judges of the facts established by the evidence in this case, the credibility of the witnesses, and the weight which you will give to the evidence of each of them. It is your right to determine from the appearance of the witnesses on the stand, their manner of testifying, their apparent candor and fairness, their apparent intelligence or lack thereof, their interest in the prosecution or defense in this action, the relation they bear to each other, their means of knowing the facts concerning which they give evidence, their temper, feeling, or bias, if any has been shown, and from all the surrounding circumstances appearing on this trial, which witnesses you will believe, and which are most worthy of credit in this action, and give credit accordingly; but if the evidence of a witness appears to be fair, is not unreasonable or improbable and is consistent with itself, and the witness has not in any manner been impeached, then you have no right to disregard the evidence of such witness from mere caprice or without cause.

"It is your duty in passing upon the credibility of the several witnesses who have testified in this cause, for the purpose

of arriving at a proper verdict in this action, to reconcile all the different parts of the testimony, if reasonably possible, giving to each witness credit for what the law presumes — that is, truthfulness concerning the facts about which he or she testifies; but if you cannot do so, then you are to decide for yourselves whom you will believe under the rules herein given you.

"In case you find that a witness has deliberately and intentionally or willfully and corruptly testified falsely as to any material fact in this case, you are at liberty to disregard and reject his or her entire evidence, but you are not obliged to do so, for a witness may be mistaken or testify falsely as to some part of his or her evidence and be truthful and correct as to the remainder thereof, and it is for you to determine, under all the circumstances of the case, how much credit you will give to the evidence of each witness and all witnesses who have testified herein, observing the rules which I have given you. Candidly consider the evidence in this case, free from passion and prejudice, fear 'or favoritism, and arrive at your verdict from all the evidence submitted to you and the law thereof as you have heard it from the court.

"You will designate one of your number to serve you as foreman, sign your verdict by him as you shall find it, and return it into open court.

"If you find for the plaintiff, your verdict will be: 'We, the jury, find the issues joined in this action in favor of the plaintiff, and assess his damages at $——.'

"If you find for the defendant, your verdict will be: 'We, the jury, find the issues joined in this action in favor of the defendant.'"

The jury returned a verdict in favor of the defendant. The plaintiff filed a motion for a new trial, which was overruled. He also filed a motion that the temporary injunction heretofore granted be made permanent. This was also overruled. Judgment was thereupon rendered for the defendant. The plaintiff excepted to the various rulings of the court and to the rendition of judgment against him, and brings the case here.

*Ritter & Skidmore*, and *W. R. Cowley*, for plaintiff in error.

*M. M. Edmiston*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: In the spring and summer of 1881, D. P. Hazeltine constructed a stone building, with a brick front and tin roof, upon his premises, in the city of Columbus, the side walls of which, from the top to the foundation, were about twenty-one feet; the length of the building one hundred and twenty feet; the foundation about three feet deep in the earth; and the walls above the foundation two feet thick; the east wall of the building being located one inch west of the east line of his lot. In August, 1881, Hazeltine moved into his building, and opened up a hardware store. He had shelves on the inside of his east wall, where he kept spoons, scissors, knives, locks, screws, hinges, etc. In April or May, 1881, Daniel Edgmand purchased the Commercial House, a two-story frame building, about twenty feet wide, with a main part about sixty feet long, and a kitchen extending back. This building was situated upon a lot adjoining and east of Hazeltine's premises. The building had a shingle roof, sloping east and west from the center, about one-third pitch. On the west side the roof had no eaves-trough, gutter, or other conductor for catching and carrying off the rain or water falling upon the building. At the south end, near the ground, the walls of the buildings were from five to seven inches apart. Upon the ground, at the north end, they were from twenty to thirty inches apart. The wooden building leaned to the east, and the space between the buildings gradually widened from the south to the north end, and from the ground up, so that the space between the walls of the buildings, at the top, ran from ten to thirty-three inches. The roof of the wooden building was about two feet below the top wall of the stone building. The eaves of the wooden building projected beyond the face of the walls. In the petition, it is alleged that the rain and water falling upon the roof of the wooden building was discharged and thrown against and upon the east wall of the stone building; that the rain and water penetrated through the wall and plastering, staining the wall and crack-

ing the plastering, whereby the shelf hardware in the stone building became damp and rusty.

Upon the trial the court, over the objection of plaintiff below, charged the jury as follows:

"While buildings are necessary for business and the habitation of man, and essential for all affairs and uses in business, yet the owners of them are called upon to exercise the highest degree of care to prevent their becoming a nuisance to others, and it is the duty of the owner and occupier of a building on a division line to keep gutters, or other appliances for the discharge of water from the roof of his building in proper repair and condition to carry off the water that collects thereon, and he is bound to have them of sufficient capacity to carry off the water that may fall in storms likely to occur. And if, in this case, the defendant, (and whether he did or not is for you to determine,) from any cause that could have been prevented, and by the exercise of ordinary care, failed to carry the water from his roof, whereby the building or property of the plaintiff was damaged, as alleged in the petition, the defendant is liable for all the consequences resulting from such defects or acts, *unless the same resulted from extraordinary or accidental circumstances.*"

This instruction is unfortunate in the language employed, and was very liable to mislead the jury. All the evidence shows that the defendant below had no gutters or other appliances to catch and carry off the rain or water falling on his west roof. Therefore it is clear that he did not exercise any care to prevent the water falling upon his own roof from being discharged upon the wall of plaintiff. No principle is more firmly established than that contained in the familiar maxim, "*Sic utere tuo ut alienum non lædas;*" and if the water from the defendant's roof fell upon plaintiff's building on account of the neglect of defendant to have a

**1. Damage for want of eaves-trough.**

trough or gutter, or some other conductor, to the injury of plaintiff's wall and hardware, the defendant is liable. Then again, there was no evidence in the case tending to show that any water or rain was discharged upon plaintiff's building from extraordinary or accidental circumstances. Extraordinary and accidental circumstances are

sometimes construed to mean something in opposition to the act of man, as storms. In any event, the law would require the defendant to have troughs or gutters of sufficient capacity to prevent the rain or water falling upon his building in all storms likely to occur, from being discharged upon plaintiff's building. (*Bellows v. Sackett*, 15 Barb. 96; Wood on Nuisances, §118.) In addition to there being no evidence tend-

2. Misleading instructions.
ing to show the circumstances referred to in the charge, without further explanation the jury would be very liable to misunderstand and misconceive the purport of the words "extraordinary or accidental." The paragraph commencing "And if in this case," etc., should have been omitted.

Again, in another part of the charge, the following language was used:

"The court says to you, that a person has the right to do any act upon his own property or land, or make such erections thereon, or have buildings thereon, which do not violate the rights of his neighbor or his property; and to this extent he has full control over his premises in the erection or maintaining of his buildings already erected. He has no right to make any erections thereon and allow them to remain so near another's land that the rain falling thereon is discharged from the eaves upon adjoining buildings or land, *except upon or by express grant or permission, or else by prescription for such a length of time as furnishes a presumption of a grant so to do, which is usually for a term of years — twenty years or more for prescription, but if by permission or grant, no particular length of time is required.*"

There was no evidence tending in any way to show that the defendant had the right to let the water falling on the roof of his building be discharged upon or against the plaintiff's building by grant, permission, or prescription. All of the exceptions stated should have been left out of the charge, as they were liable to mislead and confuse the jury.

As far as possible, instructions should be applicable to the evidence presented upon the trial, and we think, considering the verdict in this case, that the jury were probably misled by

portions of the charge which were not supported by the evidence, and in this case were wholly irrelevant. The evidence is very conflicting and contradictory as to whether the water from the defendant's roof actually fell upon the wall or building of the plaintiff, and therefore the mischief is the greater from the instructions given upon matters not in evidence. (*Savings Association v. Hunt*, 17 Kas. 532; *Raper v. Blair*, 24 id. 374; *Railway Co. v. Peavey*, 29 id. 169; *Feineman v. Sachs*, 33 id. 621; *Railway Co. v. Fray*, 31 id. 739.)

The judgment will be reversed, and the cause remanded for a new trial.

All the Justices concurring.