CHORMAN vs. Q. A. R. R. CO. ' 407

SYLLABUS.

PHILIP H. CHORMAN *vs.* QUEEN ANNE'S RAILROAD COMPANY.

*Case—Surface Water; Discharged on Land of Adjoining Owner
—Injury to Wheat Crop—Possession of Crop—Railroad Com-
pany—Private Parties—Extraordinary Storm—Damages.*

1. In an action for damages to the wheat crop of the plaintiff by reason of
water being gathered along the embankment made by the defendant, and discharged
through trunks or ditches upon the lands whereon the wheat crop was growing, it is
necessary for the plaintiff to prove (1), that he was in possession of the wheat crop;
and (2), that the crop of wheat so in his possession was destroyed by the water
wrongfully discharged upon it through the ditches cut by the defendant, and not by
water coming from any other source.

2, Although the title to the land is in the wife of plaintiff, yet if, with her con-
sent and approval, he was in possession of the land, was possessed of the wheat as his
own, and the wife was to have no part thereof, in such case the relation so created,
whether verbal or written, express or implied, would give to-him such legal posession
of the wheat as to support an action.

3. The rules of law governing the rights and duties of private owners of ad-
joining lands in respect to surface water are applicable, though a railroad company is
party defendant. Whatever may be the rights and duties of the company to see to the
safety and protection of its passengers and freight as a common carrier, they do not
enter into its relation to the plaintiff as owner or possessor of adjoining lands; as to
these, they are on an exact equality.

4. It is the duty of every owner of land, if he wishes to carry off the surface
water from his own land, to do so without material injury or detriment to the lands of
his neighbor. No owner may with impunity turn the surface water from his land
upon the land of another, to the injury of the latter, when, without the employment of
artificial means for that purpose, the same never would have flowed there at all.
Where the surface waters are collected and cast in a body upon the proprietor below,
unless into a natural water-course, the lower proprietor sustains a legal injury, and
may have his action therefor.

(*October 15, 1901.*)

LORE, C. J., and GRUBB and PENNEWILL, J. J., sitting.

*Robert C. White* for plaintiff.

*Charles W. Cullen* and *Charles M. Cullen* for defendant.

Superior Court, Sussex County, April Term, 1901.

ACTION ON THE CASE for damages to the wheat crop of the plaintiff by reason of water being gathered along the embankment made by defendant road and discharged through trunks upon the lands whereon the plaintiff's wheat crop was growing.    Facts appear in charge of Court.

The testimony of the plaintiff in response to interrogatories by his counsel, Mr. White, concerning his ownership and possession of the wheat crop was as follows :

Q.   Were you farming in January or February, 1899?
A.   Yes, sir.
Q.   Did you have any crops pitched at that time?
A.   Yes, sir; I had a crop of wheat sowed at that time.
Q.   On whose land was it sowed?
A.   My wife's.
Q.   Whose crop of wheat was it?
A.   Mine.
Q.   In whose possession was the crop of wheat?
A.   Mine.
Q.   Who sowed it, supplied the manure and all that sort of thing?
A.   I did.   I found all.
Q.   It was your crop of wheat?
A.   Yes, sir; my crop of wheat.
Q.   By what right and how do you hold or possess the farm you now occupy, and occupied in 1899 ?
A.   Well, my wife hired it on the death of her grandfather.
Q.   Then how did you get it?
A.   I simply took the farm and lived there and used it as my own.   She had no voice in it.   She gave up entirely to me.
Q.   Who stocked the farm?
A.   I did.

Q.  Who had the rents and profits from it?

A.  I did.

Q.  Did she have any part or share in it?

A.  No, sir.

Q.  Did that relate to the entire farm?

A.  That related to the entire farm.

Defendant's counsel moved for a nonsuit on the ground that the plaintiff's proof failed to show that he was a tenant of the land and entitled to the possession or ownership of the said crop of wheat, for damages to which, the action was brought; that the wheat crop was not goods and chattels, but was part of the realty growing upon the land, and there was no severance.

*Second.*  The allegation in the narr was that the defendant designedly and maliciously caused the overflow of water upon the plaintiff's land, and the proof did not show such to be the fact; the proof being that the water was drained of necessity upon the low land where the plaintiff's wheat crop was growing, that being the only place where the water could go at that time out of that cut. There was a variance, therefore, between the allegation in the plaintiff's declaration and the proof. The plaintiff, furthermore, was not entitled to recover, as the great quantity of water arose from a phenomenal storm and was the act of God.

*Third.*  That the alteration in the flow of mere surface water affords no cause for action to the person who may suffer loss or detriment therefor, against one who does no act inconsistent with the due exercise of dominion over his own soil.

*Cooley on Torts, top page, 684 ; Hale on Torts, 426 ; 11 Cushing Reports, top page, 195.*

LORE, C. J.:—The motion for a nonsuit is refused.

### PLAINTIFF'S PRAYERS.

*First.* That it is the duty of every owner of land, if he wishes to carry off the surface water from his own land, to do so without material injury or detriment to the lands of his neighbors, and if he cannot he must suffer the inconvenience arising from its presence, and cannot complain that others refuse to allow its passage over their lands.

*24 Am. & Eng. Ency. of Law, 926 ; Pettigrew vs. Evansville, 3 Ann. Rep., 50.*

*Second.* That if an owner of land divert the natural course of surface water upon his own land he must suffer the inconvenience himself and cannot carry it off upon the land of his neighbors.

*Curtis vs. Eastern R. R. Co., 98 Mass., 428.*

*Third.* That an owner of land has no right to gather the surface water upon his own land and discharge it by artificial means on the lands of his neighbor.

*Curtis vs. Eastern R. R. Co., 98 Mass., 428; 86 Am. Decisions, 521.*

*Fourth.* Railroad companies, like individuals, cannot gather the surface water on their lands into ditches and drains, and discharge the same in a body on other lands to their injury.

*Whatty vs. Lancashire R. R. Co., 13 Q. B. Div., 131—17 Am. & Eng. Ruling Cases.*

*Fifth.* That if the defendant could have carried the water off without injury to the plaintiff it was bound to do so.

### DEFENDANT'S PRAYERS.

*First.* That a mere possession is not sufficient to show title to the crop of wheat, alleged to have been destroyed, unless proof be

CHORMAN vs. Q. A. R. R. CO.        411

CHARGE.

adduced sufficient to show that the plaintiff was vested with a good title thereto.

*Second.* That if the water caused to flow through the ditches on each side of the railroad tracks at Chorman's crossing, did not immediately flow upon said lands on which the crop of wheat was growing, as alleged in said declaration, but continued to flow on the defendant's lands for several hundred feet until the water reached the natural slope towards said wheat crop, then in that case the plaintiff cannot recover any damages whatever.

*Third.* That the said defendant had a legal right for the protection of its property and its passengers and freight, to use all proper means for the removal of any surface water caused by melting snow and rain occasioned by an extraordinary storm which endangered its road-bed.

*Fourth.* That if the said damages accrued by reason of an excessive rain and snow fall occasioned by an extraordinary or phenomenal storm, it being the act of God, the defendant is not liable.

*Fifth.* ·That if the cutting of the ditches was necessary by reason of the excessive rain and snow, all occasioned by an extraordinary or phenomenal storm, the defendant had the right to cut the same; any injury was the act of God.

Lore, C. J., charging the jury:

Gentlemen of the jury:—Philip H. Chorman, the plaintiff, claims that in February, 1899, he was in possession of a tract of land situate in Broadkiln hundred in this county, through which the road-bed and the track of the Queen Anne's Railroad Company, the defendant, passed. That on that land he had growing a crop of wheat on about nineteen acres.

That on or about that date the defendant cut a ditch on each side of its railroad track, through a ridge or bank of earth called Chorman's crossing, from east to west; that through said ditches the defendant conducted and turned a large quantity of surface water which had accumulated from melted snow on the east side of the crossing, into and upon plaintiff's wheat field, where it remained for a long time, until thereby the wheat crop was destroyed, and he was damaged to the extent of the value of the wheat so lost. That the water would not have flowed upon his wheat field if the ditches had not been so cut.

The defendant on the other hand claims, that the plaintiff was not possessed of the wheat crop. That even if he was so possessed, that the wheat field was at the bottom of a large basin and that the same and other water would have found its way there even if the ditches had not been cut. Moreover, that the company had a right to so cut the ditches and discharge the water to protect its road-bed and assure the safety of passengers and freight. That the company is not liable because the damage resulted from an extraordinary snow storm.

This action is founded upon tort; that is, upon the wrongful act of the defendant.

In order to recover, therefore, the plaintiff must satisfy you by a preponderance of the evidence—

*First.* That he was in possession of the wheat crop.

*Second.* That the crop of wheat so in his possession was destroyed by the water wrongfully discharged upon it through the ditches cut by the defendant, and not by water coming from any other source.

If the plaintiff was not in possession of and entitled to the wheat, he cannot recover.

If you believe from the evidence, that the title to the land was in Chorman's wife, that with her consent and approval he was

CHORMAN vs. Q. A. R. R. CO. 413

CHARGE.

in possession of the land, and with the like consent and approval he furnished the manure, put the wheat crop in; that he was to have the rents and profits; that she was to have no part or share in it; that she gave it up entirely to him; in such case the relation so created, whether verbal or written, express or implied, would give to him such legal possession of the wheat as to support this action. In other words, if you conclude from all the evidence in the case, that the husband was possessed of the wheat as his own and the wife was to have no part thereof, then in such case he was in lawful possession.

Whether he was so possessed or not is a question of fact for you to determine from the evidence.

If you find he was, your next inquiry is, was the wheat destroyed by the water wrongfully turned upon it through the ditches cut by the defendant company?

For the purposes of this case, the plaintiff and the defendant company are private parties, and the rules of law governing the rights and duties of private owners cf adjoining lands in respect to surface water are applicable. We know no public right or privilege belonging to the company to use or dispose of its surface water different from that of a private owner. Whatever may be its rights and duties to see to the safety and protection of its passengers and freight as a common carrier, they do not enter into its relation to the plaintiff as owner or possessor of adjoining lands; as to these adjoining lands they are on an exact equality.

The rule in respect to surface water is well expressed in *Pettigrew vs. Evansville, 25 Wis., 223 (ibid 3 Am. Decisions, 50)*, decided in the Supreme Court of Wisconsin in 1870, in the following language:

" It is the duty of every owner of land, if he wishes to carry off the surface water from his own land, to do so without material injury or detriment to the lands of his neighbor, and if he cannot he must suffer the inconvenience arising from its presence. We know of no adjudged case where it has been held that the waters

of a natural pond or reservoir upon the land of one person may be drained by him directly upon the land of another, greatly to his injury; nor where one owner has been allowed, by means of a ditch, trench, sewer or the like, to gather the surface water from his own land and throw it upon the land of another, so as materially to lessen its value and produce injury to the owner. Such a proceeding would be contrary to natural right and justice, and the law does not sanction it. If the owner of land has the right, by artificial means, to prevent the flowing thereon of surface water from the land of another which in a natural state would flow there, it follows *a fortiori* that no owner may, with impunity, turn the surface water from his land upon the land of another, to the injury of the latter, when, without the employment of artificial means for that purpose, the same never would have flowed there at all."

The same doctrine is tersely expressed in *Barclay vs. Wilcox, 86 N. Y., 140*, cited by the defendant, where it says:

" But it is to be observed, that the law has always recognized a wide distinction, between the right of an owner, to deal with surface water falling or collecting on his land, and his right in the water of a natural water-course. In such water, before it leaves his land and becomes part of a definite water-course, the owner of the land is deemed to have an absolute property, and he may appropriate it to his own use, or get rid of it any way he can, *provided only that he does not cast it by drains, or ditches, upon the land of his neighbor.*"

In the same case it is said: " There is a manifest distinction between casting water upon another's land and preventing the flow of surface water upon your own."

This distinction, we may say in passing, practically disposes of the cases cited by the defendant—viz., *11 Exch., 380 ; 11 Cush-*

CHORMAN vs. Q. A. R. R. CO. 415

CHARGE.

*ing, 195; 29 N. Y., 459; 10 Allen, 106; 13 Gray, 607,*—which were all cases of preventing the flow of surface water upon one's own land, and are clearly not applicable to this case, where the damage is claimed to result from casting water upon another's land.

In *Livingston vs. McDonald, 21 Iowa, 160,* a carefully considered case, it was held, that if a ditch made by the defendant for the purpose of draining his land, and which terminated within sixty feet of the line of the plaintiff, had the effect to increase the quantity of water on the plaintiff's land to his injury, or, without increasing it, threw the water upon the land in a different manner from what the same would naturally have flowed upon it, to his injury, the defendant would be liable for the injury, even though the ditch was constructed by the defendant in the course of ordinary use and improvement of his farm.

In *Whalley vs. Lancashire, etc. Co., L. R., 13 Q. B. D., 131,* it was held, that where an embankment was cut to let off accumulations of an unprecedented rainfall, and though it was reasonably necessary to save the embankment, and though the water would have percolated through it in time, it was held a wrong.

*Cooley on Torts, *580,* says: "These cases seem to confine the obligation of the owner of the lower estate to receive the water flowing from the upper estate, to 'waters which flow naturally without the art of man; those which come from springs, or even by natural depressions of the place.' The conclusion seems to be that where the surface waters are collected and cast in a body upon the proprietor below , unless into a natural water-course, the lower proprietor sustains a legal injury, and may have his action therefor."

Cases might be multiplied almost indefinitely in support of this doctrine. Indeed, we find no well considered cases to the contrary.

It must be borne in mind that we are not considering cases where, for purposes of improvement, the owner of land is preventing the flow of surface water upon it from other lands.

In this case we deal only with the principles of law which govern the throwing of surface water from the land of one owner into and upon the land of a neighboring owner.

If, therefore, you find that by digging the said ditches the defendant caused surface water to flow upon the wheat field of the plaintiff, which destroyed the wheat crop in his possession there, and that the said water would not have found its way upon such wheat field if those ditches had not been cut, the plaintiff would be entitled to recover.

If, on the other hand, you find from the evidence that the plaintiff was not possessed of said wheat crop, or that being so possessed the wheat was destroyed by water from some other source, or from the same water which would have run upon it by other courses even if the ditches had not been cut, then your verdict should be for the defendant.

Should you find for the plaintiff, your verdict should be for such amount as from the proof the crop of wheat was reasonably worth.

Verdict for plaintiff for $135.