75 A.2d 242 (1950)
CICONTE
v.
SHOCKLEY.
Court of Chancery of Delaware, Sussex.
August 3, 1950.
Daniel J. Layton, Jr., Georgetown, for plaintiff.
James M. Tunnell, of Tunnell & Tunnell, Georgetown, for defendant.
HARRINGTON, Chancellor.
The question is whether the plaintiff is entitled to injunctive relief against the defendant.
Ciconte, the plaintiff, owns a building consisting of seven stores, one-story high and under one roof, on the west side of First Street in the town of Rehoboth, occupied by tenants. A small part of the same building at the southern end is occupied *243 by the plaintiff as a residence in the summer. The lot on which the building stands has a frontage of one hundred feet on First Street and a depth, between parallel lines, of fifty feet, the southern end of which abuts on Wilmington Avenue. The plaintiff's entire building is ninety-eight feet long by forty feet deep and covers the greater part of the lot. There is, however, a five foot strip of land back of it and on the west side of the lot covered by a concrete pavement, which is used as a private alley by the tenants of the stores, opening into Wilmington Avenue and having a slight slope towards it. Four of the stores, including the one at the north end, have back doors which open on the alley. The floors of the building are of wood and have little, if any, elevation above the concrete alley in the rear.
Shockley, the defendant, owns a lot fifty by one hundred feet fronting on Wilmington Avenue which adjoins the plaintiff's lot on the west and is designated as No. 31 on the Rehoboth plot.
In 1946 the defendant erected a two-story frame dwelling on the northern end of the lot twenty feet long from east to west and twelve feet deep from north to south which is used in connection with a restaurant on a lot owned by him fronting on Rehoboth Avenue. The building stands on a concrete foundation approximately one-half of an inch from the plaintiff's western line at the northern end, for a distance of twelve feet, but is between four and five inches from the line. The roof has a slope of about one inch towards the plaintiff's property. There are no gutters and downspouts to carry off the rain water, or water from melting snow and ice which collects on the defendant's roof. There is a metal strip, however about one inch high on the east end of the roof, but it is conceded that even in moderate rains the water runs down the side of the defendant's building and while a part seeps inside a part flows from the concrete foundation directly or indirectly onto the plaintiff's alley. In any event, it is not denied that in heavy rains the water collected by the roof shoots into the alley in considerable amounts, stands along the side of the plaintiff's building and runs over or under the doorsills into the stores or the living quarters of the tenants in the back part of them. There is evidence that this did not happen until after the defendant had erected the building on the northern end of lot No. 31, but he has refused to take steps to prevent any further injury to the plaintiff. The roof of the plaintiff's building also slopes toward the alley, but there are gutters and downspouts which deposit the rain water there, and it then runs down the alley and across the pavement into Wilmington Avenue. There is some testimony that in heavy rains the gutters and spouts of the plaintiff's building do not carry off all of the water and that boxes and refuse in the alley block the drainage towards Wilmington Avenue. While the plaintiff denies that his gutters overflow, the important fact is that the water from the defendant's roof is directly or indirectly continually cast in unusual amounts upon the plaintiff's property.
From the natural contour of the land, the surface water from the defendant's Wilmington Avenue lot would have run on the plaintiff's lot. In 1946 or 1947, the defendant made a driveway, between ten and eleven feet wide, of oyster shells and dirt along the eastern boundary of his lot, adjoining a part of the plaintiff's alley and ending at the building erected by the defendant in 1946. The plaintiff claims that this raised the level of that part of the defendant's lot and caused surface water and dirt to run into the alley in unnatural quantities. It seems to be conceded that the alley slightly raised the grade of that part of the defendant's lot but he denies that it caused any material increase in the flow of surface water onto the plaintiff's property. On the contrary, the defendant says that it blocked the natural drainage of the remainder of the lot towards the plaintiff's property. The plaintiff seeks an injunction on both grounds.
So long as the owner of land leaves it in its natural condition he is not required to take any steps to prevent the flow of surface water from his premises onto the adjoining land. Davis v. Niagara Falls Tower Co., 171 N.Y. 336, 64 *244 N.E. 4, 57 L.R.A. 545, 89 Am.St.Rep. 817; 1 Amer.Jur. 508. He cannot, however, by artificial means lawfully collect and precipitate surface water in increased and unnatural quantities upon the land of his neighbor to his substantial injury or damage. Chorman v. Queen Anne's R. Co., 3 Pennewill 407, 54 A. 687; Davis v. Niagara Falls Tower Co., supra. When, therefore, a defendant constructs a building on his own land so that the accumulation of rain water and water from melting ice and snow on the roof is discharged upon his neighbor's property, it may constitute a nuisance. Martin v. Simpson, 6 Allen, Mass. 102; Melin v. Richman, 96 Conn. 686, 115 A. 426; Hazeltine v. Edgmand, 35 Kan. 202, 10 P. 544, 57 Ann.Rep. 157; 2 Bouvier's Law Dict., Rawles Third Revision, Nuisance, page 2379. The same rule may apply when water from the roof of the defendant's building runs down the side of it in considerable quantities and after being deposited on his property runs onto the land of his neighbor. Melin v. Richman, supra. While a piece of land may receive without injury a considerable amount of surface water which gently flows thereon from the upper premises, when it is collected and discharged in mass at a given point it may be injurious. Melin v. Richman, supra. Moreover, when a nuisance is clearly established and the injured person cannot be adequately compensated in an action at law, or when the injury is a constantly recurring grievance, a court of equity will usually enjoin the wrong. Finch v. Barr & Dougherty, Inc., 15 Del. Ch. 170, 132 A. 889; Harlan & Hollingsworth Co. v. Paschall, 5 Del.Ch. 435; Wood on Nuisances 812, 826; see also Staats v. Hubbard, Del.Ch., 63 A.2d 856; Davis v. Niagara Falls Tower Co., supra; Hazeltine v. Edgmand, supra. The jurisdiction is based upon the notion of preventing irreparable injury, interminable litigation and a multiplicity of actions. Finch v. Barr, supra; Harlan & Hollingsworth Co. v. Paschall, supra; 4 Pomeroy Eq.Jur., 5th Ed. 955; Wood on Nuisances, 812. Usually the injury must be substantial and not merely of a trivial and temporary nature (4 Pomeroy, supra, 955; Staats v. Hubbard, supra); but when rights are being continually invaded the relief granted is not necessarily because the nuisance is essentially destructive of the plaintiff's property. 4 Pomeroy, supra, 966; Wood on Nuisances, 817, 820, 834; 2 Bouvier's Law Dict., Rawles Third Revision, supra, page 2381.
The plaintiff is, therefore, entitled to injunctive relief against the nuisance resulting from the defendant's mode of constructing his roof.
It seems to be conceded that the defendant's driveway slightly raised the level of a part of his lot along the plaintiff's western line; but if there was any increase in the surface water that drained on the latter's lot, it was so slight that equitable relief will not be granted.
An appropriate order will be entered against the defendant in accordance with this opinion.