E. J. HOLLINGSWORTH COMPANY, a Delaware corporation,
Plaintiff,

*vs.*

JARDEL CO., INC., a Delaware corporation,
Defendant.

*New Castle, March 2, 1962.*

*Frank O'Donnell,* of Berl, Potter & Anderson, Wilmington, for plaintiff.

*Howard M. Berg* and *John M. Bader,* Wilmington, for defendant.

SEITZ, Chancellor: Plaintiff, the owner of business real estate located in the southeast quadrant of the intersection of Old Capitol trail and Newport Gap Turnpike brings this action to enjoin the defendant from collecting and dumping its surface water by means of a storm sewer into a pipe on plaintiff's land which in turn empties into a ditch running across plaintiff's property. This is the decision after final hearing.

Although defendant argues to the contrary, I find as a fact that we are not here concerned with a stream flowing across plaintiff's property. Plaintiff's lands have served for innumerable years as the natural drainage area for the surface water of much of the surrounding land to the north and west, including most of defendant's property. It largely entered plaintiff's property from the

west and then crossed plaintiff's lands in a meandering fashion to a culvert under the railroad tracks which form the eastern border of plaintiff's property. Quite a few years ago a pipe was put in from a basin in the Old Capitol Trail (Lincoln Highway) located at the front of plaintiff's property to a ditch beginning about 80 feet back from the road. Plaintiff had caused a ditch to be dug to carry the surface water along a relatively straight line to the eastern boundary of its property and then north parallel to certain railroad tracks for a few hundred feet to the culvert beneath the tracks. Thus, the "rights" of the appropriate property owners, including defendant, to have their surface water flow in its usual way across plaintiff's lands cannot be and is not denied. I conclude, contrary to plaintiff's contention, that there has been created in defendant's favor a drainage easement across plaintiff's property. The fact that plaintiff caused an open ditch to replace the natural line of flow of the surface water does not diminish defendant's rights. The issue then is as to defendant's rights in such easement.

I need not enter into a discussion as to whether the law concerning the directing of surface water into natural streams is applicable to artificial ditches. Compare *Saelens v. Pollentier*, 7 *Ill.2d* 556, 131 *N.E.2d* 470. I say this because I am satisfied that the crucial question is whether the action to be taken by defendant will impose an excessive and continuing burden on the easement across plaintiff's land. Compare 2 *Thompson on Real Property* (*perm. ed.*) §§ 678, 697; 56 *Am.Jur., Waters* § 71. The treatment of the problem may also be expressed in terms of "nuisance". The court so viewed the matter in *Ciconte v. Shockley*, 31 *Del.Ch.* 376, 75 *A.2d* 242, holding that a property owner cannot artificially collect and disburse surface waters in increased and unnatural quantities upon his neighbor to his substantial injury or damage. Compare *Chorman v. Queen Anne's R. Co.*, 3 *Pennewill* 407, 54 *A.* 687; *Staats v. Hubbard*, 31 *Del.Ch.* 41, 63 *A.2d* 856.

I conclude that one may not in effect substantially enlarge or change a natural drainage easement by artificially collecting and casting the surface water on the lower owner to his substantial

damage. What is the defendant preparing to do here and what will its effect be on the plaintiff's property?

Defendant proposes to black-top an area of about 27 acres. This land is now in its natural state and, as such, most of "its" surface water is either absorbed or disbursed before reaching plaintiff's property. Only two-tenths of the water falling on defendant's land from any storm now flows off the ground. After the paving is completed nine-tenths will flow off. After the improvements are completed, it is clear that the amount of surface water reaching plaintiff's property will be increased about fivefold. In a ten year frequency storm there will be about 90,000 gallons a minute reaching plaintiff's land. This water will reach plaintiff's property by being collected and transmitted some several hundred yards in a storm sewer recently laid along the Old Capitol Trail to the catch basin in front of plaintiff's property. From there it will run into a pipe running under plaintiff's parking lot and then into the head of the open ditch which traverses plaintiff's property. In addition to defendant's land, about six acres from the bowling alley and parking lot across the Kirkwood Highway now drain into the defendant's land and this water will also enter the pipe leading to plaintiff's property. Finally, some additional five acres will ultimately drain into plaintiff's land in the same manner.

It is clear that the amount and rate of flow of the water crossing plaintiff's land will be greatly increased at least when a so-called 10 year frequency storm occurs. It is anticipated that this condition will arise about four times a year. The parties tacitly agree that good engineering standards call for an installation of facilities which will take care of this type of storm.

The experts on both sides were in substantial agreement that a 10 year frequency storm would flood a part of plaintiff's property. Defendant says it would merely add to the flooding of a valueless part of plaintiff's land which is located in the rear and which is admittedly partly flooded now when there is such a storm. It is clear, and defendant's expert conceded, that to carry the increased flow without a flooding of other and admittedly valuable portions of

plaintiff's property, there would not only have to be a larger or additional pipe under the parking lot (which defendant is willing to install) but the ditch would have to be widened, deepened and protected for its full length of several hundred yards. It is now about five feet across the top but it would presumably have to be enlarged to as much as 15 feet, plus a bank to prevent flooding of a large part of plaintiff's property after defendant's water is directed there. Obviously an open ditch of such proportions will adversely affect the potential value of such land and will substantially enlarge the existing easement. Defendant has no right to arbitrarily enlarge its easement.

■ Defendant emphasizes that in a ten year frequency storm there is flooding now on a portion of plaintiff's land. This is true in the area near the railroad underpass. This would not justify the flooding of a much larger area. But of vital importance, defendant concedes that there will be much greater and more damaging flooding unless the easement is substantially enlarged and protected. Defendant is not entitled to so enlarge its easement regardless of the issue as to the damage which may result from the flooding of what defendant contends to be the worthless portion of plaintiff's property.

■■ Defendant argues that the court should balance the relative economic benefit and burden in deciding this case. It argues that the benefits resulting from the improvement of its land, by way of the creation of a shopping center, are so great that they far outweigh the damage which may result to plaintiff's land. In the judicial framework in which this matter is presented, the court is not called upon to say whether the economic benefit preponderates in favor of one side or the other. One might find a contrariety of opinion in that area. The legal answer is that in the case of a clear and substantial invasion of plaintiff's property rights with no mitigating equities, there is no room for a court to weigh the relative benefits. Indeed, this is not a case where the future of defendant's venture is dependent upon the approval of the particular course here taken with respect to the disposal of its surface water.

■ I am therefore satisfied that there will be an excessive burden on the easement in question when defendant directs all of

its surface water into the pipe leading to plaintiff's property. It will also so change the situation that a continuing nuisance will be created.

■■ Defendant says plaintiff should be left to its remedy at law for damages. I think this is a continuing wrong to plaintiff's property and justifies equitable intervention. See *Ciconte v. Shockley,* above; *Soule v. City of Passaic,* 47 *N.J.Eq.* 28, 20 *A.* 346. Nor does the fact that other landowners are now helping to impose a continuing burden on the easement justify defendant's actions. Compare *Soule v. City of Passaic,* above.

I now consider the relief to which plaintiff is entitled. Plaintiff seeks a permanent injunction against the defendant putting its surface water into the sewer line which connects with the outlet on plaintiff's property. Some of the surface water from defendant's lands now drains onto plaintiff's property. However, it would be quite impractical to say that an amount may be permitted to enter plaintiff's land which would be the equivalent of that which would now reach plaintiff's land in a ten year storm. In any event, one could not control the much greater concentration factor. What is the answer?

Plaintiff says there is a reasonable alternative for defendant and that is to install a storm sewer from the intersection easterly along Newport Gap Pike. Defendant objects on the ground of expense. I assume it would be substantial although there is no evidence as to cost. If defendant decides to adopt this course I will hear the parties as to whether defendant may make use of the other drainage ditch on plaintiff's property by installing an adequate pipe.

■■■ As the court has invariably recognized, the problem of accommodating conflicting interests in surface water cases is most difficult. The court is given general principles but in the final analysis the rule of reasonable use compels the trial court to weigh the various relevant factors and seek to find an equitable accommodation. It seems to the court that the extent of the burden which defendant will place on the easement is so great that plaintiff is entitled to a permanent injunction prohibiting defendant from permitting surface water from flowing into plaintiff's drainage pipe unless defendant is

willing to cause a completely covered pipe of adequate size to be laid in the ditch from plaintiff's property line to the railroad underpass. This would not increase the size of the easement and would give recognition to the fact that defendant now has easement rights. Defendant says such a requirement will give plaintiff "more" than it now has, but that benefit is incidental. It is defendant alone which seeks to impose the excessive burden and resultant damage and it would not seem equitable to require plaintiff to help pay to improve a condition with which it is now satisfied and to effectuate a change which is not of its making.

The court will not now take action with respect to the alleged deficiency in the "fall" of the pipe now laid along the Old Capitol Trail. If the possible flooding consequences therefrom cannot be overcome by the remedy ultimately adopted, I will entertain an appropriate application in this action.

Present order on notice.