No. 22,819.

THOMAS J. LISTON, *Appellant,* v. WALTER E. SCOTT and ELSIE SCOTT, *Appellees.*

SYLLABUS BY THE COURT.

1. SURFACE WATERS—*Rights of Landowner Respecting Control of Surface Waters.* In cities, where the common-law rule respecting surface waters is still in force (Gen. Stat. 1915, § 4050, as amended by Laws 1917, ch. 176, § 1), the landowner has the right to use and improve his own land for the purposes for which similar land is ordinarily used; he may build upon it, or raise or lower its surface, even though the effect may be to shed surface water over land upon which it would not otherwise go. (*Mo. Pac. Rly. Co. v. Renfro,* 52 Kan. 237, 34 Pac. 802. See, also, *Bryant v. Merritt,* 71 Kan. 272, 80 Pac. 600.)

2. SAME—*Action to Abate Nuisance—Demurrer to Petition Properly Sustained.* In an action to abate an alleged nuisance and for damages to city property claimed to result from conditions created by an adjoining lot owner by which water falling upon defendants' house, concrete walk and lot was cast upon plaintiff's premises, *held,* a demurrer to the petition was properly sustained, since it appeared that the water which fell upon the house (there being no eaves trough or conductors), ran down the concrete walk to the rear of defendants' house and there mingled with the water that fell upon all the premises of defendants, thus becoming mere surface water which followed the natural slope of the ground, so much of it as was not taken up by the soil, finding its way to the plaintiff's premises.

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed January 8, 1921. Affirmed.

*L. O. Carter,* of Kansas City, for the appellant.

*E. Q. Stillwell,* of Kansas City, for the appellees.

The opinion of the court was delivered by

PORTER, J.: The action was one for the abatement of a nuisance and for damages. The appeal is from an order sustaining a demurrer to the petition.

The plaintiff's residence property in Kansas City adjoins that of the defendants. It was alleged that the plaintiff maintains a concrete retaining wall at the rear of his premises; that defendants built a retaining wall on the same alley and filled in their premises from a depth of one foot to eighteen inches or more above the yard and premises of the plaintiff with a drain or slope toward plaintiff's property; that defendants also built and maintain a concrete sidewalk at the side of their house extending back to the rear end thereof and between the premises of the plaintiff and defendants, which drains and sheds the water toward and on to the premises of plaintiff; also that defendants' house "has a very large roof and watershed, being about forty feet long and twenty feet wide, without any drain pipes, eaves troughs, guttering or other conductor whatsoever to carry off the rain or water falling thereon," and that defendants "allow and permit the water and rain that may fall, to accumulate and run off said roof onto the walks, yard and premises of the defendants, to overflow, flood and run off all their said premises upon the premises of the plaintiff, thereby causing the retaining wall at the rear of plaintiff's yard" to be undermined and causing the water to wash across the property of the plaintiff to his injury and damage. The trial court construed the facts as presenting an ordinary surface-water case and held that plaintiff could not recover.

The plaintiff contends that the case of *Hazeltine v. Edgmand,* 35 Kan. 202, 10 Pac. 544, is controlling. In that case defendant's building came within a few inches of the side or wall

of plaintiff's building. There were no drains, gutters or conductors for carrying off the rain or water from the defendant's building, and it was held for that reason that an action would lie against him for damages caused by the water falling off his roof and being discharged against the wall of plaintiff's building.

Two other cases relied upon are *Fitzpatrick v. Welch,* 174 Mass. 486, and *Conner v. Woodfill et al.,* 126 Ind. 85. In the Massachusetts case it was held that one who arranges a roof and gutter in such a way that the first will collect water and the second discharge it through an aperture upon a neighbor's land is liable for the damages caused thereby. In the Indiana case it was held:

"One who sheds the water from his building by means of spouts so as to throw it upon the lot of an adjoining owner is guilty of a trespass and is liable to an action for the injuries occasioned thereby." (Syl. ¶ 1.)

There is one averment in the petition which, if it could be taken by itself, comes close to stating in general language a cause of action in line with those sustained in the cases cited by plaintiff and to which we have referred. It is the statement "that the defendants have also built, constructed and maintained for a period of about four years, a certain concrete sidewalk on the south side of their house and extending back to the rear end thereof, and between the premises of the plaintiff and the defendants, which drains and sheds the water toward and onto the premises of plaintiff." By what precedes the statement and by what follows, it is apparent, however, that the plaintiff is not contending that the concrete walk acted as a gutter by means of which the water falling from the roof was thrown directly upon his premises. In addition to defendants' having filled in their own lot, raising it above the plaintiff's premises, it is alleged that they *"have also built"* and maintain a concrete sidewalk which drains and sheds the water toward and on to the premises of the plaintiff; but the manner in which the water is discharged upon plaintiff's premises is set forth in detail in the next paragraph, where it is stated that the roof of defendants' dwelling has no guttering or conductor to carry off the rain or water falling thereon, and that "they [defendants] allow and permit the water and rain that may fall, accumulate and run off said roof on to the walks,

yard and premises of the defendants to overflow, flood and run off all their said premises upon the premises of the plaintiff." The petition recites no facts to indicate how close the defendants' house stands to the line of plaintiff's property, or to indicate the distance from the rear of the house, where the concrete walk ends, to the retaining wall where the water is finally discharged upon plaintiff's property. Of course, if the conditions created by the defendants amount to the same thing as though the water had been directly thrown from the roof of their house and the concrete walk upon the premises of plaintiff, they would not be relieved of liability because of the distance the water was thrown. Counsel, in his brief, frankly states his position thus:

"The water from the defendants' building did not fall directly off the roof on to the plaintiff's premises, but the conditions built by the defendants caused it to overflow and be finally precipitated thereon, and it is our contention that if they created that condition they are just as liable as though the water had been directly thrown from the roof of their house or from some other condition·which they improperly created upon the premises of the plaintiff."

Besides, if plaintiff intended to rely upon the claim that because of the absence of eaves trough or guttering, the water from the roof fell upon the concrete walk and was thereby thrown upon his premises, he could, when the demurrer was sustained, have taken leave to amend to make clear that he was not seeking to recover damages caused by water which fell upon and flowed over the entire premises of the defendant before reaching his own. He elected, however, to stand upon his petition. The defendants had the right to fill in their lot. The act of 1911 (Gen. Stat. 1915, § 4050, as amended by Laws 1917, ch. 176, § 1), abolishing the common-law rule and substituting therefor the rule of the civil law with respect to surface waters applies only to lands used for agricultural purposes and highways lying wholly outside the limits of any incorporated city. In cities where the common-law rule is still in force, the "landowner has the right to use and improve his own land for the purpose for which similar land is ordinarily used; and he may build upon it, or raise or lower its surface, even though the effect may be to prevent surface water, which before flowed upon it, from going upon it, or to draw from adjoining land surface water which would otherwise remain

there, or to shed surface water over land on which it would not otherwise go." (*Mo. Pac. Rly. Co. v. Renfro*, 52 Kan. 237, 242, 34 Pac. 802. See, also, *Bryant v. Merritt*, 71 Kan. 272, 80 Pac. 600.)

The only reasonable inference from the statement of all the facts in the petition is that the water ran down the concrete walk to the rear of defendants' house, and there mingled with the water from the whole of the defendants' premises, thus becoming mere surface water which followed the natural slope of the ground, and that so much of it as was not taken up by the soil found its way to plaintiff's premises.

The judgment is affirmed.