No. 45,538

Norbert I. Baldwin and Beverly M. Baldwin, *Appellees,* v. The City of Overland Park, Kansas, a Municipal Corporation, *Appellant.*

(468 P. 2d 168)

Opinion filed April 11, 1970.

*Donald C. Amrein,* of Mission, argued the cause and was on the brief for the appellant.

*John H. Johntz, Jr.,* of Payne & Jones, of Olathe, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

HARMAN, C.: This is an action for damages against a city for alleged maintenance of a nuisance created by flow of water in a drainage ditch adjoining plaintiffs' property.

Trial to the court resulted in a judgment for plaintiffs from which the city has appealed.

The evidence developed at trial, about which there is no dispute, revealed the following:

In 1962 plaintiffs purchased the property in question, a house and lot at 7312 Beverly street, Overland Park, Kansas, which they have since occupied as their home. The house was constructed in 1954. Along the north side of the property a rock and mortar retaining wall had been built. The wall was 120 feet long, eighteen inches wide, and six or seven feet high at one end and four feet high on the other, with a chain link fence installed on top. The wall had no footings and contained no apertures in its face through which ground water could escape. It was located entirely on plaintiffs' land and was in good shape when plaintiffs bought the property. Parallel and adjacent to the wall the city has a drainage and utility easement ten feet wide. This easement was one platted by the developers of the land prior to its incorporation within the city.

Located on the easement is a drainage ditch ten to twelve feet wide and five to seven feet deep. The ditch has a flat, rocky bottom and drains a residential area of approximately twenty blocks generally south of 69th street and east of Metcalf avenue. This area was developed prior to 1962, with the exception of 73d Street Terrace which has had homes constructed since that time. New sidewalks were built. About a dozen cul-de-sacs in the area drain into the ditch. The city did not construct the ditch, has done nothing to improve it and has never maintained it but has on occasion removed trash from it when requested to do so. At times during and after rains the rapidly moving water in the ditch has

carried along with it much debris. The drainage water has been increasing in volume and intensity.

In 1961 a petition was circulated in the area asking creation of a water benefit district. In 1965 the city adopted standards and specifications for construction of storm drainage systems but the city has none within its corporate limits.

In the area drained by the ditch along plaintiffs' property there are a few short storm sewers and some cement conduits draining water under and from the streets into the ditch. Much of the area is impervious to natural water seepage into the ground because of driveways, rooftops and streets. There has been continuous erosion in the ditch since 1958, particularly in the area between Lamar and Nall Avenues.

In the fall of 1965 about six feet of plaintiffs' wall fell in. They notified the city engineer and were informed the city had no funds for maintaining water drainage ditches. In May of 1966 plaintiffs repaired the wall, this being about two weeks before the damage in question.

On June 12, 1966, there was a heavy, although not unprecedented, rainfall in the area. Approximately eighty feet of plaintiffs' wall fell in and water came into the basement of their home to a depth of over two feet, causing the basement wall and floor to crack and damaging items of personal property in the basement. Before the retaining wall fell in there had been vertical eroding of the soil under it of about five or six inches.

On July 20, 1966, plaintiffs filed with the city notice of their damage as required by K. S. A. 12-105, and later instituted this suit when their claim was not paid.

As indicated, plaintiffs prevailed, the trial court making findings of fact reciting the evidence generally in accord with that stated. Its essential findings upon which liability is predicated were as follows:

"4. During the time since plaintiffs moved into their home the drainage ditch and flow of surface water therein and the over flowing of the water from the ditch and easement have caused the plaintiffs and other residents of the area great annoyance. On numerous occasions, after rains, the water would be 5 to 7 feet in the ditch, and would overflow on adjoining properties. The water flow would be with such high speed and great force that it would carry railroad ties, large rocks weighing from 50 to 75 pounds, logs, trees, lumber, children's wagons and play equipment, sewage and other debris downstream and deposit them along the ditch. It caused serious erosion up stream, down

stream, and opposite plaintiffs' property, and eroded out deep water holes, in the easement, in which water would stand and become stagnant, and in which mosquitoes would breed. The defendant once sprayed to kill the mosquitoes in the area near plaintiffs' home. There was frequently an odor from the ditch. The ditch was a hazard to plaintiffs' children and other children living in the area.

"5. Over a period of years the defendant has greatly increased the amount of run off water in the ditch on its easement by the construction of new streets, draining streets into the ditch, and construction of artificial water courses which carried surface water from streets and numerous cul de sacs into the ditch. Many new homes with drive ways which are impervious to natural water seepage into the ground have been erected in the area within a few blocks of plaintiffs' home. The entire surrounding area is now largely developed into a residential district with many areas such as roofs, and drive ways causing an additional flow of surface water into the ditch and easement."

Based upon the foregoing the court concluded:

"1. The above described storm water ditch on defendant's easement, and the above referred to conditions created thereby constituted a nuisance, for which defendant is liable, as defined and explained in Jeakins v. The City of El Dorado, 143 Kansas 206 and other more recent supreme court decisions. That defendant created and maintained said nuisance."

Upon appeal the city makes several contentions, among them that it had not created or maintained a nuisance for which it is liable.

For affirmance plaintiffs rely principally upon four of our cases. The first is *Jeakins v. City of El Dorado*, 143 Kan. 206, 53 P. 2d 798. The petition for damages alleged the city operated a sewage disposal plant, dumping treated sewage into the Walnut River; during drouth periods the river became so low the volume of water was insufficient to carry away the waste material so that its stench became offensive to plaintiffs' residence near the river. After pointing out that although cities are authorized by statute to erect and maintain sewers and sewage disposal plants, this court held they are not warranted in operating them as to constitute a public nuisance, and if they do so operate, they become liable in damages to persons injured, it being no defense that such erection and maintenance are in the exercise of a governmental function. The court ruled the petition sufficiently alleged a nuisance, saying:

"Nuisance means annoyance, and any use of property by its owner which gives offense to or endangers life or health, violates the laws of decency, or obstructs the reasonable and comfortable use of property of another, may be said to be a nuisance." (Syl. ¶ 2.)

Plaintiffs next cite *Krantz v. City of Hutchinson, et al.*, 165 Kan.

449, 196 P. 2d 227. In this action the city, at a time of emergency when flood waters from the Arkansas River threatened, allegedly constructed a dike more than five miles beyond the city limits in order to protect the city with the result water was diverted from its natural course and thrown against the land of plaintiffs to their damage. At that time a city had statutory authority to erect such a dike only within a distance of five miles from the city. In reversing the trial court's order sustaining a demurrer to plaintiffs' petition this court quoted approvingly from 38 Am. Jur., Municipal Corporations, § 645, p. 352 as follows:

"On the other hand, the universal rule that one person cannot change the course of drainage and cast upon the land of another water which naturally would not have flowed there applies equally to municipal corporations, so that a municipal corporation incurs the same liability as an individual when it damages the land of another person by casting thereon water which would not have flowed there naturally, either by changing the course of drainage, by causing surface water to accumulate and flow on to the land of another person in greater quantities than would naturally have flowed there, or by collecting surface water into artificial channels in such quantities that it overflows onto adjoining property." (pp. 457-458.)

Plaintiffs also cite *Morris v. City of Kansas City*, 189 Kan. 52, 366 P. 2d 788, a nuisance action based upon flooding of a residence property. Plaintiff's property was located in an area annexed by the city, his home being near a street which had been built across a drainage ditch or ravine. A culvert was installed under the street to carry the water in the ditch but, prior to the flooding in question, complaint had been made to the city and the city had determined the culvert was only half large enough to drain surface water adequately in time of heavy rainfall. In describing the condition this court commented that "the city was maintaining what amounted to a dam, formed by the city street, on a natural drain." (p. 55.) Plaintiff's property was flooded and he alleged nuisance and recovered judgment against the city. The culvert had been installed in the street prior to annexation of the area by the city and the principal issue upon appeal was stated to be "whether the city can be liable when it is apparent that it did not create the nuisance but merely maintained it and had knowledge of its existence." (p. 52.) This court, after ruling a nuisance existed, stressed the fact the city after annexation of the area had been maintaining the street and the culvert and held the city liable for the maintenance of a nuisance of which it had notice even though it had not created the nuisance.

Finally, plaintiffs rely on *Spacek v. City of Topeka*, 189 Kan. 645,

371 P. 2d 165, an action against a city for alleged maintenance of a nuisance by the discharge of surface water from its paved streets and storm sewers into a natural waterway which flowed through plaintiff's land. The evidence showed that by reason of the paving in the area water flowed against the property with greater force and erosive power. A demurrer to plaintiff's evidence was sustained because he showed no injury to his property during the three months' period immediately preceding the date he filed his statutory notice of claim against the city and this court affirmed. We are unable to find in the case any comfort to plaintiffs here.

After the case at bar was heard in the trial court this court decided *Cherry v. Board of County Commissioners*, 202 Kan. 121, 446 P. 2d 734, in which recovery for personal injury to a four year old boy was sought for the county's maintenance of a nuisance upon land owned by it. Plaintiff contended his evidence showed a classic case of nuisance in that the land was infested with insects, rodents, contained an abandoned well, debris, trash and glass and could well be characterized as an "eyesore" to the community. However, the injury derived from a fall upon a piece of glass and not from any other offensive condition of the premises, and absent causal connection, it was held these other conditions could not be made the basis for actionable nuisance. To be actionable, the nuisance complained of must be the proximate cause of the injury and damage for which recovery is sought. Mention is made of this ruling only for clarification in focusing attention on the private nuisance in the case at bar—water damaging plaintiffs' property on June 12, 1966—not debris, mosquitoes, stagnant water or odor.

Plaintiffs contend, and the trial court found in its finding No. 5 already quoted, that the city increased the volume and rate of flow of water coming against plaintiffs' property in time of heavy rainfall. Plaintiffs concede their recovery must be on this basis.

As indicated, we have no precedent on a city's liability under the present facts. In the *Krantz* case the city built the dike which diverted water from its natural course onto the complainant's land. In the *Morris* case the city maintained an inadequate culvert in one of its streets which amounted to a dam. In each instance the city took some affirmative action in directing water where it would not otherwise have gone.

The need for drainage of surface water is at best a perplexing and costly problem in a growing urban area. Cities are, of course,

authorized to establish the grade of streets and to pave, curb and gutter them. K. S. A. 13-428 authorizes a city of the first class, "To alter and change the channels of streams and watercourses; to build and erect walls, levees and ripraps to protect or straighten banks of streams, and pay for the same out of the general-improvement fund. . . ." Under K. S. A. 13-1055, *et seq.*, (and amendments) such cities are authorized to construct at general city expense certain types of storm sewer systems, and they have long had authority to create special benefit drainage districts. However, authority to act is not alone the legal equivalent of a command to act and we are not aware of any legislative mandate to a city, or other duty resting upon it, to provide drainage. Hence it follows that ordinarily a city's failure to protect citizens from surface water is not actionable (see 18 McQuillin, Municipal Corporations, 3d ed. rev., § 53.140, p. 526; 38 Am. Jur., Municipal Corporations, § 645; anno. 173 ALR 1033).

What then is a city's responsibility with respect to surface waters? In 63 C. J. S., Municipal Corporations, § 883, the following appears:

"*Surface Water.* a. In General

"In the control and disposition of surface waters, municipal corporations ordinarily have the same rights and are subject to the same liabilities as private persons. In the absence of statute or charter providing otherwise, they are under no obligation to prevent the natural flow of surface waters or to protect private property from damage therefrom, and they are not liable for any damage caused thereby. [p. 275.]

. . .

"b. Obstructing, Diverting, or Increasing Flow.

"As a general rule a municipal corporation is not liable for damage caused by the increased or accelerated flow of surface waters which have not been diverted from their natural course, or by the incidental change or interruption in, the discharge of, or the increased or accelerated flow of, surface waters caused by the lawful improvement of its streets or the making of other public improvements." (p. 277.)

In 18 McQuillin, Municipal Corporations, 3d ed. rev., § 53.141, we find this:

"A fortiori, a municipality is not liable to a property owner for the increased flow of surface water over or onto his property, arising wholly from the changes in the character of the surface produced by the opening of streets, building of houses, and the like, in the ordinary and regular course of the expansion of the municipality." (pp. 531-532.)

In the case at bar there is no indication the city disturbed in any way the natural drainage of the twenty block area in which plain-

tiffs' property is located. According to the evidence and a map submitted by the parties the ditch must, from force of gravity, be characterized as a natural drainway for surface waters. Its course has not been altered. No new water has been collected and diverted into it from some other area or source. Obviously, in determining liability, a distinction exists and should be made between the discharge of surface water into a natural drainway on a person's property and discharging it on land where it would not have naturally gone. A municipality has no right to alter the course of drainage of surface water so as to throw water upon property where it does not naturally flow (see 2 Farnham, Waters and Water Rights, § 184).

Plaintiffs' real complaint here seems to be based on the fact that because of the city's growth and development the ditch came to carry a sufficient volume of water to erode plaintiff's wall into collapse and subsequently to invade their basement. Whenever a structure is erected in a city, whether it be house, driveway, sidewalk, street or whatever, the area for natural percolation of water is diminished and the flow of surface water is to that degree altered. Every new brick adds to the runoff. Where rapid growth has occurred the resultant problem is primarily an economic one for cities and citizenry and, under the present state of our law, its solution properly lies in concerted political action rather than in the courts.

We approve and adopt the rule stated above in *McQuillin* and hold therefore the trial court erred in ruling a nuisance existed for which the city is liable.

The judgment is reversed.

APPROVED BY THE COURT.