No. 87,771

THOMAS L. WILLIAMSON and WYNEMA D. WILLIAMSON, husband and wife; TERRY L. WILLIAMSON and DEBI J. WALKER, a/k/a DEBI J. WALKER WILLIAMSON, husband and wife, *Appellants*, v. CITY OF HAYS, KANSAS, and WESTERN PLAINS SERVICE CORPORATION, *Appellees*.

64 P.3d 364

Opinion filed March 7, 2003.

*John C. Herman*, of Hays, argued the cause and was on the brief for appellants.

*Dennis L. Bieker,* of Dreiling, Bieker & Hoffman, LLP, of Hays, argued the cause and was on the brief for appellee Western Plains Service Corporation.

*James M. McVay,* of Watkins, Calcara, Rondeau, Friedeman, Bleeker, Glendenning & McVay, Chtd., of Great Bend, argued the cause and was on the brief for appellee City of Hays.

The opinion of the court was delivered by

DAVIS, J.: Thomas Williamson, Wynema Williamson, Terry Williamson, and Debi Walker Williamson brought suit against the City of Hays (City) and Western Plains Service Corporation (Western) for trespass, negligence, and injunctive relief based upon the collection, accumulation, and flow of water and other materials through a storm sewer drainage system over their property. The district court granted summary judgment for the City and Western. The Williamsons timely appeal. We affirm.

Thomas and Wynema Williamson are the owners of real estate which Terry and Debi Williamson are purchasing under a written contract. The Williamsons' property lies just outside the city limits.

Western owned a tract of platted and subdivided property inside the city limits known as the 41st Street Plaza First, Second, and Third Additions. Some lots within the subdivisions have been sold to individuals who are not parties to the present action. The western edge of Western's Second and Third Additions, in addition to some of Westerns' unplatted and unsubdivided property, borders the eastern edge of the Williamsons' property. Certain property within Western's First, Second, and Third Additions was dedicated to the City for public streets and storm sewers.

The City filed an eminent domain action against the Williamsons seeking to condemn some of their property for a temporary and permanent easement. The purpose of the easement was for the installation, construction, maintenance, and operation of a storm sewer for water drainage to serve the 41st Street Plaza First, Second, and Third Additions within the City. In their answer to the eminent domain action, the Williamsons attempted to advance a claim of trespass against the City. Appraisers were appointed who recommended total compensation of $540 to the Williamsons for both the temporary and permanent easements. The journal entry

awarded $350 to Thomas and Wynema Williamson and $190 to Terry and Debi Williamson for the easements taken. The district court acknowledged that the Williamsons intended to proceed in a separate action "on matters which are not properly before the Court in this condemnation action" including their claim of trespass against the City.

The Williamsons brought this present action against the City and Western claiming that the defendants were liable for the damage to their property caused by the drainage of surface water onto their property. Their action is based upon their claims of trespass and negligence. They also asked the district court to enjoin Western and the City from collecting and depositing water, residue, and pollutants on their property.

Both defendants answered, denying any trespass or negligence. The City, by way of affirmative defense, alleged among other defenses that the plaintiffs' claims were barred by the Kansas Tort Claims Act (KTCA). See K.S.A. 2002 Supp. 75-6104(m). Upon completion of discovery, both Western and the City filed motions for summary judgment. After a full hearing, the district court granted both defendants summary judgment.

## Decision of the district court

The district court relied upon the following uncontroverted facts in granting the defendants summary judgment:

"3. The subdivisions [Western's] have been properly platted and developed as residential property, including the installation and construction of public streets, sanitary/sewer and water mains. The installation of these public structures was done under generally recognized and prevailing standards in existence at the time.

"4. Prior to construction of these public works and the development of the subdivisions, the natural drainage of water from the land owned by Western Plains Service Corporation (at least that part which is in controversy), was to the west onto Plaintiffs' property.

"5. Subsequent to the development of the subdivisions, the drainage in question continued to the west onto Plaintiffs' land.

"6. Plaintiffs contend that the westerly flow of rain water from the subdivision[s] has been concentrated into a storm sewer system which discharges onto Plaintiffs property at a higher velocity allegedly causing 'damage, erosion, a nuisance, pollution, and a hazard.'

"7. Discovery is closed, and Plaintiffs have not produced any scientific or quantifiable evidence either before or after construction of the subdivisions relating to quantity, velocity and quality of water discharged onto Plaintiffs' property. There is anecdotal evidence from Plaintiffs and Defendants as to flooding before the subdivisions were developed and water conditions after development.

"8. Plaintiffs contend that the concentrated discharge of water constitutes a trespass, and further contend that the storm water collection facilities were negligently designed and constructed, thereby damaging Plaintiffs' property.

"9 Although it is clear storm water from the subdivisions flows onto Plaintiffs' property, as it did prior to development, there is no evidence of negligent design or construction. Indeed, the only evidence in that regard are the affidavits of city officials which state that the 'installation/construction and the plan and design of the public streets, public sanitary/sewer and public water mains were all in conformity with generally recognized and prevailing standards in existence at that time.' "

Based upon the above findings, the district court entered the following conclusions of law:

" 'Under common law, surface water was a common enemy of land owners. The landowner was free to elect the method of control. The enactment of the statutory forerunners to K.S.A. 24-105 and 24-106 modified the common law. A land owner's right to deal with surface water in any manner was restricted.' *DeWerff v. Schartz,* 12 Kan. App. 2d 553 (1988), and *Clawson v. Garrison,* 3 Kan. App. 2d 188 (1979).

"K.S.A. 24-105 provides in pertinent part: 'It shall be unlawful for a landowner or proprietor to construct or maintain a dam or levy which has the effect of obstructing or collecting and discharging with increased force and volume the flow of surface water to the damage of the adjacent owner or proprietor . . . *Provided,* That the provisions of this section shall apply only to lands used for agricultural purposes and highways lying wholly outside the limits of any incorporated city. . . .'

"K.S.A. 24-105 does not modify the common law rule within incorporated limits of a city. The rule in Kansas now is '(T)hat as to agricultural lands outside the incorporated limits of a city, upper proprietors may not divert their surface waters by artificial means onto the means of lower proprietors nor accelerate by means of ditches or increase the drainage of their lands to the injury of lower owners.' *Clawson v. Garrison,* 3 Kan. App. 2d at 203.

"As to surface waters within incorporated cities, the common law rule is still in force. That is, the 'landowner has the right to use and improve his own land for the purpose for which similar land is ordinarily used; and may build upon it, or raise or lower its surface, even though the effect may be to . . . shed surface water over land upon which it would not otherwise go.' *Liston v. Scott,* 108 Kan. 180 (1921).

"'A municipality is not liable to a property owner for the increased flow of surface water over or onto his property, arising wholly from changes in the character of the surface produced by the opening of streets, building of houses, and the like, in the ordinary and regular course of the expansion of the municipality.' *Baldwin v. City of Overland Park*, 205 Kan. 1 (1970), Syl. 5.

"Plaintiffs' contention of trespass is not supported by the relevant case law and Kansas statutes cited above, and must therefore fail. There is no evidence of negligent design or construction of the storm water collection facilities, thus that contention fails as well. Finally, there is no evidence to support Plaintiffs' contention that the quality of water draining onto Plaintiffs' land has been adversely affected by the Defendants thereby causing damage to Plaintiffs.

"For the reasons cited above, the motions of the Defendants, City of Hays and Western Plains Service Corporation, for summary judgment are granted. Further it would appear to the Court that the City of Hays is entitled to exemption from liability under the Kansas Tort Claims Act, K.S.A. 75-6104(m)."

The plaintiffs appeal. Our jurisdiction is based on our transfer of this appeal from the Court of Appeals pursuant to K.S.A. 20-3018(c). Additional facts necessary to resolve the issues raised by the plaintiffs in this appeal are set forth below.

The plaintiffs contend that the district court erred in granting summary judgment for the following reasons: (1) The provisions of K.S.A. 24-105 apply; (2) even if the statute does not apply, the "common-enemy doctrine" does not relieve the defendants from liability; and (3) the City is not exempt from liability under the KTCA.

## (1) K.S.A. 24-105

The district court found K.S.A. 24-105 inapplicable to Western's property because the property is located inside the city limits. The Williamsons argue that the City's ownership of the easement is outside of the city limits and, therefore, both the origin and the destination of the surface water from Western's development are, for purposes of K.S.A. 24-105, outside the city limits:

"Plaintiffs contend that by Defendants' condemning the property it condemned and placing the receptacle and its pipe leading from it as it chose—and then not including that property within its own city limits, it has made a de facto election to come within the purview of K.S.A. 24-105, even though both defendants now argue its inapplicability to the present facts."

Interpretation of a statute is a question of law, and the appellate court's review is unlimited. *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000). The fundamental rule of statutory construction to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998).

K.S.A. 24-105 provides as follows:

"It shall be unlawful for a landowner or proprietor to construct or maintain a dam or levee which has the effect of obstructing or collecting and discharging with increased force and volume the flow of surface water to the damage of the adjacent owner or proprietor; but nothing herein shall be construed as preventing an owner of land from constructing a dike or levee along the bank of a natural watercourse to repel flood waters from such natural watercourse if plans therefor have been approved as required in K.S.A. 24-126, as amended: *Provided, That the provisions of this section shall apply only to lands used for agricultural purposes and highways lying wholly outside the limits of any incorporated city."* (Emphasis added.)

The initial issue to be resolved is whether K.S.A. 24-105 applies to the facts of this case. The plain language of the statute provides that it shall apply only to lands used for agricultural purposes and highways lying wholly outside the limits of any incorporated city. The City obtained a permanent easement for purposes of constructing a storm sewer in order to serve subdivisions within the city limits. While the storm sewer was constructed on property outside the city limits, the property, by reason of the permanent easement through condemnation, belongs to the City. The express purpose of the storm sewer was to serve property within the city limits.

The uncontroverted facts in this case establish that the lands involved are not wholly outside the limits of any incorporated city. As the statutory language precludes application of the rule to prop-

erty other than property used for agricultural purposes, it follows that the statute does not proscribe activity inside the city.

The language used by this court to summarize the effect of K.S.A. 24-105 supports the conclusion that the statute does not apply in this case. In *Liston v. Scott*, 108 Kan. 180, 183-84, 194 Pac. 642 (1921), this court summarized the statute as follows:

"The act of 1911 (Gen. Stat. 1915, § 4050, as amended by Laws 1917, ch. 176, § 1), abolishing the common-law rule and substituting therefor the rule of the civil law with respect to surface waters applies only to lands used for agricultural purposes and highways lying wholly outside the limits of any incorporated city. In cities where the common-law rule is still in force, the 'landowner has the right to use and improve his own land for the purpose for which similar land is ordinarily used; and he may build upon it, or raise or lower its surface, even though the effect may be to prevent surface water, which before flowed upon it, from going upon it, or to draw from adjoining land surface water which would otherwise remain there, or to shed surface water over land on which it would not otherwise go.' [Citations omitted.]"

Thus, *Liston* concluded that the common-law rule (common-enemy doctrine) is still in effect with respect to lands inside city limits. 108 Kan. at 183.

We conclude, as did the trial court, that K.S.A. 24-105 does not apply under the facts of this case. The construction of the storm sewer is on lands, which by reason of the eminent domain proceeding, the City obtained a permanent easement over and for which easement the plaintiffs have been compensated. In addition, Western's development, which is served by the storm sewer constructed by the City, is wholly within the city limits. The plain language of the statute provides that it shall "apply only to lands used for agricultural purposes and highways lying wholly outside the limits of any incorporated city." K.S.A. 24-105. Thus, the district court correctly concluded that K.S.A. 24-105 did not apply under the facts of this case.

### (2) The Common-Enemy Doctrine

The Williamsons argue that under the common-law common-enemy doctrine, the district court erred in granting summary judgment in favor of Western and the City.

The standard of review regarding summary judgment is as follows:

"The standard of review for a motion for summary judgment is well established. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. K.S.A. 60-256(c). On appeal, we apply the same rules, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Jackson v. U.S.D. 259,* 268 Kan. 319, 322, 995 P.2d 844 (2000).

Mere allegations are not sufficient to defend against a properly supported motion for summary judgment:

"When a motion for summary judgment is made and supported as provided in this section, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue for trial." K.S.A. 2002 Supp. 60-256(e).

See *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.,* 250 Kan. 754, 762, 863 P.2d 355 (1992) ("To defeat a properly supported motion for summary judgment, the nonmovant must come forward with 'specific facts showing that there is a genuine issue for trial.' [Citation omitted.]"). "Where there is an absence of evidence necessary to support an essential element of the plaintiff's claim, defendants are entitled to summary judgment." *Hall v. Kansas Farm Bureau,* 274 Kan. 263, 278, 50 P.3d 495 (2002).

The Williamsons' action against the defendants is based upon trespass and negligence. While the common-law common-enemy doctrine has some application in determining whether summary judgment was appropriate, the ultimate question in this case is whether the judgment may be affirmed as a matter of law.

Trespass

Trespass is an intentional tort. *United Proteins, Inc. v. Farmland Industries, Inc.,* 259 Kan. 725, Syl. ¶ 4, 915 P.2d 80 (1996). In order to support an action in trespass, it must be established that the " 'defendant intends to have the foreign matter intrude upon the land, or where the defendant's "act is done with knowledge

that it will to a substantial certainty result in the entry of foreign matter." ' [Citation omitted.]" *United Proteins*, 259 Kan. at 729.

The district court, primarily relying upon the common-enemy doctrine and the holding in *Liston*, 108 Kan. 180, determined that the defendants were legally entitled to make improvements on lands within the City, with the result that the water draining on the defendants' property did not constitute a trespass.

Beyond mere allegations, the record is silent as to the quality of water flowing onto the plaintiffs' property. No scientific tests were conducted by the plaintiffs, and no experts were called to testify regarding the quality of such water. There was no evidence of pollution.

The evidence presented supports the conclusion that the direction of flow of water onto the plaintiffs' property remained the same as it was before construction of the storm sewer. The evidence established that the water is concentrated and discharged through a 24' pipe onto the plaintiffs' property. However, the deposition testimony of Debi Williamson and Terry Williamson indicated that prior to the development, the water collected at another location and continued as it does now into a pond. While the point of concentration is different, the flow of the water across the Williamsons' property has been unchanged. The record does not show that the change in collection point has caused additional damage that would not have been caused had there been no development.

In support of their motions for summary judgment, Western and the City rely on the affidavits of John Youll, a licensed engineer acting as supervising engineer for the development. According to Youll, the development did not increase the area of land that feeds surface water onto the Williamsons' property. Surface water that did not drain onto the Williamsons' property before the development continued to drain elsewhere after the development. When asked whether she agreed with the conclusion that no additional water was diverted to her property, Debi Williamson said she had no knowledge of that. Youll admitted in his affidavit that some of the property "may have changed the quantity of storm water and the velocity of the storm water draining from said area onto plain-

tiffs' property" but was unaware of any other storm water alterations caused by said development.

In *Puhr v. Kansas City*, 142 Kan. 704, 707, 51 P.2d 911 (1935), this court noted that surface water "may not be accumulated by one owner and cast in volume or with force upon the land of another, but, generally speaking, consequence of retention, diversion, repulsion, or altered transmission, is not actionable injury, unless pursuant to statute relating to agricultural land and highways outside the boundaries of cities." We have concluded that K.S.A. 24-105, the Kansas statute relating to agricultural land and highways outside the boundaries of cities, does not apply in this case.

The district court relied on *Baldwin v. City of Overland Park*, 205 Kan. 1, 468 P.2d 168 (1970). *Baldwin* was based upon the fact that streets and driveways diminish the ability of the ground to absorb the water, thus increasing the amount of surface water run-off. The City argues that *Baldwin* should control in this case:

" 'As a general rule a municipal corporation is not liable for damage caused by the increased or accelerated flow of surface waters which have not been diverted from their natural course, or by the incidental change or interruption in, the discharge of, or the increased or accelerated flow of, surface waters caused by the lawful improvement of its streets or the making of other public improvements.' [Citation omitted.]" *Baldwin*, 205 Kan. at 7.

*Baldwin* notes:

"In the case at bar there is no indication the city disturbed in any way the natural drainage of the twenty block area in which plaintiffs' property is located. According to the evidence and a map submitted by the parties the ditch must, from force of gravity, be characterized as a natural drainway for surface waters. Its course has not been altered. No new water has been collected and diverted into it from some other area or source. Obviously, in determining liability, a distinction exists and should be made between the discharge of surface water into a natural drainway on a person's property and discharging it on land where it would not have naturally gone. A municipality has no right to alter the course of drainage of surface water so as to throw water upon property where it does not naturally flow (see 2 Farnham, Waters and Water Rights, § 184).

"Plaintiffs' real complaint here seems to be based on the fact that because of the city's growth and development the ditch came to carry a sufficient volume of water to erode plaintiff's wall into collapse and subsequently to invade their basement. Whenever a structure is erected in a city, whether it be house, driveway, sidewalk, street or whatever, the area for natural percolation of water is diminished

and the flow of surface water is to that degree altered. Every new brick adds to the runoff. Where rapid growth has occurred the resultant problem is primarily an economic one for cities and citizenry and, under the present state of our law, its solution properly lies in concerted political action rather than in the courts." 205 Kan. at 7-8.

The record on appeal, through the deposition of Debi Williamson, establishes that the water prior to the development "trickled" onto her property across the property line, but after the development the water "collected in one area and shot out in one area." Western, in its motion for summary judgment, admitted that the "velocity and direction of the flow of water has changed." *Baldwin* establishes that a city can increase or accelerate the flow of surface waters through the lawful improvement of it streets or other public improvements. 205 Kan. at 7. The evidence is undisputed that the City, as well as Western, developed property within the city limits through lawful improvements.

The Williamsons argue that the common-enemy doctrine does not give a property owner license to do harm to neighboring properties. See *Hazeltine v. Edgmand*, 35 Kan. 202, 213, 10 Pac. 544 (1886) (holding that a landowner is liable if he or she sheds water to a neighbor's property through neglect, thereby causing damage). See Annot., *Modern Status of Rules Governing Interference with Drainage of Surface Waters*, 93 A.L.R.3d 1193, § 10(a). However, the common-enemy doctrine does not give a landowner license to harm neighboring properties. *Baldwin* does not permit a municipality to disturb the natural drainage of water, nor does *Baldwin* permit a landowner to shed water on a neighbor's property that would not otherwise have gone there. See 205 Kan. at 7-8. In the case we deal with, none of the factors that *Baldwin* says will create liability have been established by the plaintiffs.

The changes made by the City on its permanent easement accommodated Western subdivisions within the city limits. The changes were made to accommodate the expansion of the City. Under these circumstances and the evidence of record, we hold that *Baldwin* squarely addresses the issue at bar. Whether the expansion of a city that increases the flow and velocity of water is actionable depends on whether the water changes its ordinary and

regular course. There is no evidence to support a conclusion that the water course has been changed. The undisputed evidence establishes the opposite conclusion. The municipality has no liability even with increased flow and velocity of the surface water. In this case, the water, while concentrated at the point where it enters the plaintiffs' property, is no greater than would otherwise flow on the plaintiffs' property. The uncontroverted evidence shows that the water discharged from the storm water drainage system follows its normal historic course winding its way through the plaintiffs' property until it reaches the plaintiffs' pond, as it did before the development.

The undisputed evidence demonstrates that Western and the City have not increased the surface area of land that is feeding surface waters onto the plaintiffs' property, that the water flowing onto the plaintiffs' property continued after construction of the storm sewer to follow its normal historic course, and that there was no evidence of pollution. The district court found that "Plaintiffs have not produced any scientific or quantifiable evidence either before or after construction of the subdivisions relating to the quantity, velocity and quality of water discharged onto Plaintiffs' property." The record supports this finding. While the velocity of water may have increased, velocity alone will not support an action against the City. See *Baldwin,* 205 Kan. at 7. Under the appropriate standard of review, the plaintiffs have failed to establish a trespass by the City or by Western. The decision of the district court that trespass has not been established is affirmed.

### Negligence

"In order to establish negligence, a plaintiff must prove the existence of a duty, a breach of that duty, an injury, and proximate cause, that is, a causal connection between the duty breached and the injury suffered." *Davey v. Hedden,* 260 Kan. 413, 426, 920 P.2d 420 (1996).

Affidavits submitted by the City regarding the construction and installation of the storm sewer system indicate that the "installation/construction and the plan and design of the public streets, public sanitary/sewer and public water mains were all in conformity

with generally recognized and prevailing standards in existence at that time."

The affidavits submitted by the City indicate the installation and construction of the streets and storm sewers were in conformity with generally recognized and prevailing standards. The plaintiffs have failed to present any evidence of negligence on the part of the defendants. Nor have they countered the evidence of the defendants that there was no negligence. Moreover, as indicated above, there is no evidence of pollution as alleged by the plaintiffs. The decision of the district court that the plaintiffs' claim of negligence fails is affirmed.

Because we affirm the district court's rejection of the Williamsons' claims of negligence and trespass, we need not reach the issue of whether the City is shielded from liability in this case under the KTCA.

Affirmed.