(128 P.3d 417)
No. 90,878

RICHARD DUNCAN, LORA DUNCAN, BILLY F. FRANKLIN, EUNICE M. FRANKLIN, MICHAEL J. GROVES, JUDITH GROVES, TROY HOWERTON, DEBROAH HUNT, EUGENE JOHNSTON, OLETA B. GOFORTH-JOHNSTON, DAVID SCOTT RAINS, MICHELE RAINS, LAWRENCE F. RILEY, JOLETA S. RILEY, ANNA L. SCHONES, BOB SQUIRES, JOELYN SQUIRES, STEVE WHITE, AND PATSY WHITE, *Appellants/Cross-appellees*, v. CITY OF ARKANSAS CITY, KANSAS, and KANSAS DEPARTMENT OF TRANSPORTATION, *Appellees/ Cross-appellants*.

Opinion filed February 17, 2006.

*Randall K. Rathbun, Dennis L. Gillen*, and *Tony L. Atterbury*, of Depew, Gillen, Rathbun & McInteer, LC, of Wichita, for appellants/cross-appellees.

*Otis W. Morrow*, city special council, *Alvin D. Herrington* and *Edward L. Keeley*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, and *Sally A. Howard*, chief counsel, and *Gelene Savage*, of Kansas Department of Transportation, of Topeka, for appellees/cross-appellants.

Before HILL, P.J., GREENE, J., and BUKATY, S.J.

GREENE, J.: Landowners in Cowley County whose properties were purportedly damaged by a 1998 flood due to the actions or inactions of governmental entities involved in a highway/levee project appeal the district court's summary judgment against them in favor of the City of Arkansas City (City) and the Kansas Department of Transportation (KDOT), arguing that the district court misapplied Kansas law governing liability of governmental entities. City and KDOT cross-appeal the district court's refusal to make certain corrections to its memorandum decision. We affirm the district court's summary judgment, rendering moot the cross-appeal.

*Factual and Procedural Background*

After suffering severe flood damages to their homes and businesses after the 1998 "Halloween Flood," plaintiff landowners brought suit against City and KDOT alleging that in work on a flood control project, the purported removal from design or the delay in construction of a secondary levee (the Tieback Levee) that was intended to protect plaintiffs' properties were acts of negligence and nuisance. Plaintiffs specifically alleged that "water which would never have flowed into the plaintiffs' neighborhood was diverted there" as a result of defendants' conduct. City and KDOT disclaimed any duty to plaintiffs and asserted various defenses and immunities under the Kansas Tort Claims Act (KTCA), K.S.A. 75-6101 *et seq*.

After extensive discovery including the depositions of respective experts, City and KDOT moved for summary judgment. Uncontroverted facts of interest to this appeal include the following:

In 1996, a joint levee/highway project was approved to construct two levees to the east of Arkansas City. One north/south levee would create a bypass for Highway 77 (the Bypass levee) and a second small east/west levee would stretch between the Bypass Levee and the existing north/south elevated embankment on which the railroad ran (the Tieback Levee). Together, the Bypass Levee and the Tieback Levee constituted the total Flood Control Project for the Walnut River (the Flood Control Project). Persons living outside the existing old Walnut River levee had no protection from the Walnut River prior to the construction of the Bypass Levee and the completion of the Tieback Levee.

The Flood Control Project was identified as KDOT Project No. 77-18 K-4431-01 and was submitted to the Kansas Department of Agriculture, Water Resources Division chief engineer for his required approval on November 27, 1995. The application was approved as Approval No. LCL-0045 on June 3, 1996, by the chief engineer, stating that "[a]ll work authorized by this approval shall be performed in accordance with the maps, plans, profiles and specifications filed with the application, and . . . the attached approval conditions."

The Bypass Levee and KDOT Highway Bypass took a number of months to build. The operating parameter throughout the entire levee project was that until the new protection (the Bypass Levee and the Tieback Levee) was in place, the old protection (the existing Old Walnut River levee) was relied on.

Plaintiffs do not contend that the Flood Control Project was not constructed according to the design and plan submitted and approved by the chief engineer. Rather, plaintiffs claim that the plan as approved was defective for failing to incorporate a "contingency plan" which would provide plaintiffs, before the construction of the Flood Control Project was completed, with the level of protection intended to be achieved at its completion.

The Flood Control Project design and plan as submitted and approved were prepared in conformity with all applicable laws, regulations, and the generally recognized and prevailing engineering standards in existence at the time it was prepared. No regulations, requirements, or standards applicable to the Flood Control Project, including the regulations promulgated by the Department of Agriculture, Division of Water Resources, contain any requirement for a contingency plan during the construction of a levee.

The Bypass Levee portion of the Flood Control Project had been completed by the time of the 1998 flood. The KDOT Highway Bypass project was also completed by that time. The Tieback Levee portion of the Flood Control Project had not yet been completed at the time of the 1998 Flood due to delays by the Kansas Historical Society over a concern that American Indian artifacts might be buried in the area. Approval from the Historical Society was required before the Tieback Levee construction could begin.

The flood crest of the Walnut River during the 1998 flood reached an all-time historic high in Arkansas City, according to the National Weather Service records, and *both* the Old Walnut River Levee and the Old Arkansas River Levee were overtopped and breached.

Plaintiffs' expert M.S. Mitchell admitted in his deposition that he knew of no requirements of any State of Kansas agency for there to be any type of contingency plan during construction of a flood control project. He also admitted that he knew of no regulations

or requirements applicable to the Flood Control Project design or plan which would require a contingency plan to be included in the Flood Control Project design or plan.

Plaintiffs produced no evidence whatsoever that the volume or elevation of water on their properties during the 1998 flood was increased from the flooding they would have been subject to had the Bypass Levee not been constructed by that time. Furthermore, the calculations by defendants' expert hydrologist, Jonathan Jones, based on available flood data, demonstrated that all plaintiffs would have experienced essentially the same amount of flooding on their property in 1998 if the Bypass Levee had not been constructed as they did in fact experience, taking into account all relevant factors.

The following facts were presented by the City and KDOT as uncontroverted, but plaintiff landowners then attempted to controvert them with an affidavit from their expert. The purported uncontroverted facts stated:

"[Plaintiff's expert] M.S. Mitchell admitted in his deposition that he knows of no project that had a contingency plan in place during construction of a flood control project.

"Plaintiffs' expert M.S. Mitchell, admitted during his deposition that it is not necessary to have a contingency plan during construction of a flood control project because there may be many situations during the construction where someone could be adversely affected because of the stage construction was in."

The controverting affidavit stated:

"I [M.S. Mitchell] have reviewed the Statement of Uncontroverted Facts put forth by the defendants in this case. It would appear the defendants have misunderstood my conclusions in this matter. It is not my position that a written contingency plan is required for every possible contingency that can arise during the construction of a flood control project. It is, however, clear to me that it is custom and practice in the industry—an industry I have been involved in for the last 50 years—that when changes are made that could expose parts of a project to flooding there is an obligation on the part of parties responsible for the construction to develop a contingency plan to minimize the effects of that change on the total project. This is certainly custom and practice in the industry and in my view certainly not a matter of discretion. I have worked on and around flood control and drainage projects for the last half century and have never seen a situation like this in which the sponsor of the project made changes to the project and failed to make provisions to protect its citizens. Again, this to me is not a matter of discretion. Custom and practice in the industry require this."

Ultimately, the district court sustained City and KDOT motions for summary judgment and dismissed the claims of negligence and nuisance in a comprehensive memorandum opinion, concluding:

"The opinions of defendants' expert are based on data accumulated and analyzed by the witness and are within the scope of his expertise. The data analyzed proportions the significance of the opinion, in the absence of a countervailing opinion, to the level of compelling under the maxim quoted in *Mid-State Fertilizer v. Exchange Nat. Bank*, 877 F.2d at 1339, cited in *City of Chanute v. Williams Natural Gas Co.*, 743 F. Supp. 1437 at 1444. The opinion of defendants' expert is that construction of the bypass levee was not the proximate cause of the flooding of plaintiffs' properties: the flooding would have occurred if the bypass levee had never been built and the flooding experienced by plaintiffs was not the result of construction of the bypass levee to the stage accomplished at the time of the 1998 flood. Plaintiffs offer no testimony to challenge the opinions of defendants' expert, which are admissible as facts within the requirements of K.S.A. 60-256(e). Under the rule of *Celotex* [*Corp. v. Catrett*, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)], adopted in Kansas, plaintiffs have failed to establish a genuine dispute to a material fact—proximate cause of their injuries by the negligent acts of defendants—on which they would have the burden of proof on trial. Based on the summary judgment record herein, defendants, and each of them, are entitled to judgment against each of the named plaintiffs dismissing the plaintiffs' individual causes of action."

Defendants later filed a motion for an order nunc pro tunc to correct purported misstatements in the memorandum decision, specifically requesting correction of "two inadvertent errors in three sentences of Judge Bishop's 18-page Memorandum Decision." District Court Judge Robert L. Bishop filed a journal entry taking under advisement the requested amendments. Judge Bishop then retired, which left the issues to be decided by Senior Judge Jack L. Lively, who decided the "suggested changes [were] substantive and inconsistent with Judge Bishop[']s filed memorandum" and could not be corrected. Plaintiffs filed a timely appeal; defendants filed a timely cross-appeal.

*Standard of Review*

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as

a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, an appellate court must apply the same rules and where reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 788, 107 P.3d 1219 (2005).

*Did the District Court Err in Granting Summary Judgment for the City and KDOT?*

Plaintiff landowners essentially complain on appeal that the district court erred in applying Kansas law to the uncontroverted facts, which they contend demonstrated that City and KDOT undertook a discretionary act and thereafter performed that act in a manner that constituted negligence or nuisance. They articulate this argument as follows:

"The decision of the defendants to remove the protection of the tie-back levee protecting the plaintiffs was a discretionary judgment by these defendants. The plaintiffs do not attack this decision. The defendants are liable because once they exercised their discretion and decided to remove the tie-back levee from the project, they were under an obligation to do so in a non-negligent manner. They likewise were not free to create a nuisance in the process."

We begin by examining the applicable statute establishing immunity from liability of governmental entities for performance of discretionary acts. K.S.A. 2005 Supp. 75-6104 provides:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(e) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved;

. . . .

"(m) the plan or design for the construction of or an improvement to public property, either in its original construction or any improvement thereto, if the plan or design is approved in advance of the construction or improvement by the governing body of the governmental entity or some other body or employee exercising discretionary authority to give such approval and if the plan or design was prepared in conformity with the generally recognized and prevailing standards in existence at the time such plan or design was prepared."

The uncontroverted facts clearly established that the entirety of the highway/levee project was authorized and approved by the Kansas Department of Agriculture, Water Resources Division. Although plaintiffs apparently now contend that the design—as modified for delay in completion of the Tieback Levee—was not in conformity with generally recognized and prevailing standards, we note that plaintiffs made no attempt to controvert the fact statement suggesting the design was formally approved. Instead, plaintiffs submitted a belated affidavit of their expert suggesting that it is custom and practice in the industry to create a contingency plan to address changes made during construction of a flood control project.

Contrary to Mitchell's deposition testimony that he knew of no project that had a contingency plan in place during construction and that it was not necessary to have such a plan, the belated affidavit suggested that such contingency plans were the custom and practice in the industry. Given the expert's deposition testimony, this affidavit was ineffective to create a genuine issue of material fact. See *Mays v. Ciba-Geigy*, 233 Kan. 38, Syl. ¶ 1, 661 P.2d 348 (1983) (party may not defeat summary judgment by filing a subsequent affidavit impeaching previous deposition testimony). Accordingly, in the absence of facts demonstrating that K.S.A. 2005 Supp. 75-6104 is not applicable, City and KDOT were immune from liability by reason of this statute. Although this plan/design immunity was not the express basis for the district court's decision, it serves as an alternate basis for our conclusion to affirm the district court's dismissal of plaintiffs' action.

Second, and perhaps more fundamental, established Kansas law generally recognizes no action against governmental entities for failure to control surface waters or for any increased or accelerated

flow caused by lawful improvement, especially where it is demonstrated that the public improvement caused no greater amount of damage to adjoining landowners than would have been caused without the improvement. A city has no duty to provide drainage to take care of surface waters, and ordinarily its failure to protect citizens from surface water is not actionable. *Baldwin v. City of Overland Park*, 205 Kan. 1, Syl. ¶ 3, 468 P.2d 168 (1970).

" 'In the control and disposition of surface waters, municipal corporations ordinarily have the same rights and are subject to the same liabilities as private persons. In the absence of statute or charter providing otherwise, they are under no obligation to prevent the natural flow of surface waters or to protect private property from damage therefrom, and they are not liable for any damage caused thereby.' [Citation omitted.]" 205 Kan. at 7.

"As a general rule, a municipal corporation is not liable for damage caused by the increased or accelerated flow of surface waters which have not been diverted from their natural course, or by the incidental change or interruption in, the discharge of, or the increased or accelerated flow of surface waters caused by the lawful improvement of its streets or the making of other public improvements." *Williamson v. City of Hays*, 275 Kan. 300, Syl. ¶ 5, 64 P.3d 364 (2003).

"In any event, if the act of the district in its work on a flood control project did not result in a greater amount of damage to landowners from overflow than would have been caused if there had been no change, the district will not [be] liable to the landowners." 52B C.J.S., Levees & Flood Control § 19, p. 551.

The district court viewed the last of these principles as the mere application of a proximate cause requirement and cited *Cole v. Shell Petroleum Corp*, 149 Kan. 25, 36-37, 86 P.2d 740 (1939), where the court stated:

"The record fails to disclose plaintiff's crops would not have been damaged or that they would not have been damaged to the same extent except for the [defendant's] structures themselves or the structures as maintained. In fact, we think the damage occurred independent of the structures as maintained. That being true, there could be no recovery even though it were conceded, which it is not, that defendant had been negligent in the erection or maintenance of the structures. [Citations omitted.] . . .

. . . .

" 'The principle involved is simply that of causation. Except when there are joint tort-feasors "a defendant's tort cannot be considered the legal cause of plaintiff's damage, if that damage would have occurred just the same even though defendant's tort had never been committed." ' [Citations omitted.]"

We agree with the district court. In the absence of evidence that any acts or omissions of the defendants—including the delay in completion of the Tieback Levee—caused flood damage in excess of that which would have been sustained in any event, there was simply no proximate cause established. Whether plaintiffs' claims are characterized as negligence or nuisance, defendants were entitled to judgment as a matter of law. See *Williamson,* 275 Kan. at 311; *Baldwin,* 205 Kan. 1, Syl. ¶ 2; *Culwell v. Abbott Construction Co.,* 211 Kan. 359, 364, 506 P.2d 1191 (1973).

The cross-appeal merely challenges the district court's failure to make corrections to the memorandum of decision and is moot by reason of our conclusions above.

Affirmed.